624 S.E.2d 873

JEFFERSON UTILITIES, INC.,
Petitioner Below,
Appellant,

v.

JEFFERSON COUNTY BOARD OF
ZONING APPEALS, Respondent
Below, Appellee.

Jan Cary Kletter, et al., Petitioners
Below, Appellees

v.

Jefferson County Board of Zoning
Appeals, Respondent Below,
Appellee,

and

Elmer Lee Roderick, et al., Intervenors
Below, Appellees.

Buckeye Development, Appellant

Jan Cary Kletter, et al., Petitioners
Below, Appellees,

v.

Jefferson County Board of Zoning
Appeals, Respondent Below,
Appellant.

and

Elmer Lee Roderick, et al., Intervenors
Below, Appellees.

No. 32559, 32560, 32561.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 21, 2005.

Decided Nov. 30, 2005.

Gregory K. Jones, Assistant Prosecuting Attorney, Charles Town, for Jefferson County Board of Zoning Appeals.

David M. Hammer, Hammer, Ferretti & Schiavoni, Martinsburg, for Elmer Lee Roderick.

Richard G. Gay, Nathan P. Cochran, R. Greg Garretson, Law Office of Richard Gay, Berkeley Springs, Peter L. Chakmakian, Charles Town, for Buckeye Development, LLC, and Jefferson Utilities, Inc.

Michael D. Lorensen, Bowles Rice McDavid Graff & Love, Martinsburg, for Paul Raco.

ALBRIGHT, Chief Justice:

Presented through this consolidated appeal is the meaning of the term "public water" for zoning related decisions arising under both state and local laws in effect in Jefferson County, West Virginia. After careful consideration of this issue, we determine that Appellant Jefferson Utilities, Inc. ("Jefferson Utilities"), as a public utility within the meaning of West Virginia law, is providing "public water" within the meaning of the local laws at issue. With regard to the orders entered on July 9, 2004, and July 12, 2004, by the Circuit Court of Jefferson County through which the lower court ruled that zoning administrators are ministerial employees who are prohibited from exercising discretion and further held that the Jefferson County Board of Zoning Appeals ("Board") must apply a *de novo* standard of review to decisions made by zoning administrators and are barred from deferring to any findings made by the zoning administrator, we wholly reject the reasoning employed by the circuit

court. Under the local ordinance at issue, a zoning administrator is required to exercise some discretion on a limited basis when applying factors set forth in the local ordinance as part of the mandated review process. While an appeal to the Board from a determination by a zoning administrator is permitted by statute, there is no basis for the circuit court's conclusion that the Board is required on an appeal to reconsider each and every aspect of the decisions reached by the zoning administrator and is expressly prohibited from deferring to any determination made by the zoning administrator. Because both of the decisions reached by the lower court, as set forth in the July 9 and 12, 2004, orders, are predicated on the lower court's determination that the zoning administrator is prohibited from applying any discretion in the exercise of his/her duties and that the Board is concomitantly barred from deferring to findings made by a zoning administrator, each of those decisions is hereby reversed.

## I. Factual and Procedural Background

### A. Jefferson Utilities Case

Jefferson Utilities, a privately owned corporation, was formed in 1985 for the purpose of owning and operating a public water system in Jefferson County, West Virginia. Through merger, Jefferson Utilities acquired the public water systems of Walnut Grove Utilities, Inc., and Shenandoah Junction Public Water, Inc. Currently, Jefferson Utilities owns, maintains, and operates a public water system that serves approximately 1,400 customers. Jefferson Utilities is regulated by the West Virginia Public Service Commission and the Bureau for Public Health of the West Virginia Department of Health and Human Resources.

The framework for land development in Jefferson County is governed by a comprehensive planning and zoning regulatory scheme which includes the Jefferson County Zoning and Development Review Ordinance (the "Ordinance"). In performing the requisite land evaluation and site assessment ("LESA") that is required by the provisions of the Ordinance,[1] Paul Raco, the zoning

---

1. The LESA is a numerical rating system that is assessed based on criteria detailed in sections 6.3 (soils assessment) and 6.4 (amenities assessment)

of the Ordinance, which is applied in the first instance by the zoning administrator. *See generally Corliss v. Jefferson County Board of Zoning*

administrator, determined that Jefferson Utility was not providing water to the public in the same manner as a "public utility." The significance of qualifying as a "public utility," or as a provider of public water, is that the zoning administrator awards zero points for the LESA scoring element of public water availability where water is supplied by a public utility. Being awarded a low score on this element, as well as the other LESA factors, is crucial to obtaining a favorable LESA score,[2] which is necessary to obtain approval for land development under the Development Review System ("DRS") set in place by the Ordinance. Rather than getting the optimal score of zero for the water availability aspect of the LESA score, Jefferson Utilities was routinely being awarded the score of three by the zoning administrator as part of the LESA evaluations.[3] The zoning administrator assessed Jefferson Utilities this score based on his position that Jefferson Utilities is not a "public utility" or provider of public water because of its private ownership. Mr. Raco took the position that absent governmental ownership, he could not award a score of zero to an entity supplying water to the public.

Contending that inconsistent LESA scores were being awarded to various water suppliers,[4] Jefferson Utilities sent a letter dated September 16, 2002, to the zoning administrator, requesting a written determination of section 6.4(f) of the Ordinance, the section which addresses the "public water availability" component of the LESA score. After receiving a response from Mr. Raco, in which he reasserted his position that a privately-owned water supplier could not come within the meaning of the term "public water" under the Ordinance, Jefferson Utilities appealed that decision to the Board. Because the Board could not reach a decision by majority vote following a public hearing on this issue,[5] no action was taken in connection with the appeal.[6]

Jefferson Utilities filed a petition for writ of certiorari with the circuit court, as permitted by West Virginia Code § 8–24–59 (1969) (Repl.Vol.2003), for review of the Board's decision. Upon its review of this matter, the circuit court issued a ruling on July 9, 2004, through which it undertook to analyze the statutory authority and role of the zoning administrator. After *sua sponte* concluding that the zoning administrator was a ministerial employee with no discretionary powers for resolving zoning related issues or authority to interpret terms contained in the Ordinance, the circuit court determined that the letter opinion issued by Mr. Raco was not an official act subject to its review because the zoning administrator lacked authority to interpret an Ordinance provision and dismissed the action. Jefferson Utilities appeals from the lower court's dismissal of its writ of certiorari and continues to seek a ruling on the issue of whether it qualifies as a "public utility," or more specifically, as a provider of "public water" within the meaning of the law.

### B. Kletter Cases

Through its order of July 12, 2004, the circuit court issued rulings in a consolidated matter comprised of four separate appeals from the Board. The four separate rulings

*Appeals,* 214 W.Va. 535, 591 S.E.2d 93 (2003) (discussing LESA factors).

2. Only if a score of 60 or less is obtained as a result of the LESA evaluation does the process known as the Development Review System continue pursuant to the provisions of the Ordinance. Since the zoning applications at issue were lodged, the Ordinance has been amended to reduce the optimal LESA score from 60 or less to 55 or less.

3. The range of scores for the LESA scoring category of public water availability is 0 to 11, with 0 being the score awarded where public utilities are providing the necessary water supply and 11 being the score awarded where private wells are to be used for the water supply in connection with a proposed development.

4. Jefferson Utilities noted in its letter that differing results had obtained among the following public utilities: Jefferson County Public Service District, Charles Town Water Department, Harpers Ferry Water Works, Shepherdstown Waterworks, and Jefferson Utilities.

5. The vote was two in favor of reversing the zoning administrator's ruling to two opposed.

6. Pursuant to West Virginia Code § 8–24–52 (1969) (Repl.Vol.2003), any action taken by a board of zoning appeals is not official "unless authorized by a majority of all of the members of the board." *Id.*

involved three proposed residential developments in the rural district of Jefferson County where each developer[7] was seeking a conditional use permit through the DRS process to gain approval for high density development in an area zoned for rural use.

On September 9, 2003, the circuit court issued an eighty-eight page ruling concerning these matters through which it ruled that the Board erred in finding that certain support data submitted by the developers in support of their conditional use permit applications was sufficient and consequently remanded the cases for further proceedings. In addition, the trial court concluded that the Board erred in ruling that section 5.7(d) of the Ordinance permitted development of a non-residue rural parcel. Based on the pending nature of this Court's decision in *Corliss v. Jefferson County Board of Zoning Appeals*, 214 W.Va. 535, 591 S.E.2d 93 (2003), the circuit court reserved discretion to reconsider its ruling upon motion of either party following the issuance of the *Corliss* opinion.[8] Both Buckeye Development and the Board filed motions seeking reconsideration of the trial court's September 9, 2003, ruling following the issuance of the *Corliss* decision.[9]

By order entered on July 12, 2004, the circuit court responded to the motions for reconsideration by upholding its decision to reverse and remand. Rather than turning its decision on the insufficiency of the support data as it had initially held in its September 9, 2003, order, the trial court adopted a new tack by concluding that the zoning administrator was a ministerial employee with no authority to exercise any discretion. Reasoning that the Board had applied an improper standard of review in deferring to any decisions reached by the zoning adminis-

trator with regard to the sufficiency of the support data, the circuit court concluded that reversible error had been committed.[10] Remand was ordered for further proceedings and to require the Board to adopt its own rules of procedure that would be patterned after standard trial procedures. Through this appeal, both Buckeye Development and the Board seek a reversal of the July 12, 2004, ruling and affirmance of the Board's rulings authorizing the issuance of the conditional use permits sought by Buckeye Development to proceed with its proposed development of the Daniel's Forest and Forest View subdivisions.[11]

## II. Standard of Review

■ As we explained in *Webb v. West Virginia Board of Medicine*, 212 W.Va. 149, 569 S.E.2d 225 (2002), "[o]n appeal, this Court reviews the decisions of the circuit court under the same standard of judicial review that the lower court was required to apply to the decision of the administrative agency." Id. at 155, 569 S.E.2d at 231; *accord Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995). The standard that applied to the circuit court's review of the consolidated appeals from the Zoning Board was announced in syllabus point five of *Wolfe v. Forbes*, 159 W.Va. 34, 217 S.E.2d 899 (1975): "While on appeal there is a presumption that a board of zoning appeals acted correctly, a reviewing court should reverse the administrative decision where the board has applied an erroneous principle of law, was plainly wrong in its factual findings, or has acted beyond its jurisdiction."

---

7. One appeal challenged the zoning administrator's decisions regarding the proposed Daniel's Forest subdivision; two appeals involved decisions regarding the proposed Forest View subdivision; and one appeal involved the proposed Aspen Greens subdivision.

8. Like the Kletter cases, the issue addressed in *Corliss* was the sufficiency of data submitted by the developer in support of a conditional use permit application.

9. This Court issued its decision in *Corliss* on October 10, 2003.

10. The trial court's altered rationale was due to this Court's ruling in *Corliss* in which we reversed the trial court's decision that the support data submitted by the developer in that case was insufficient. This Court admonished the trial court in *Corliss* with regard to its refusal to give the proper amount of deference to the administrative decisions reached on the issue of the sufficiency of the submitted support data. *See Corliss*, 214 W.Va. at 542–43, 591 S.E.2d at 100–01. *See infra* note 13.

11. The developer of the Aspen Greens subdivision is not involved in this appeal. *See supra* note 7.

We have further recognized that "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). With these standards in mind, we proceed to consider the arguments presented through this consolidated appeal.

## III. Discussion

### A. Public Utility

The amenities section of the development review system requires the calculation of a score for the component of "public water availability." Section 6.4(f) provides that "[t]his criterion assesses the availability of existing public water service with available capacity that is approved by the County Health Department and/or Public Service District to the site at the time of the development proposal application." The Ordinance provides for a score of "0" where public water is available; "3" where central water is proposed; and "11" where private wells must be utilized.

As support for the zoning administrator's position that Jefferson Utilities was not entitled to the lowest score possible in assessing the availability of public water, Mr. Raco opined that the word "public" means " 'owned by the people' " or " 'government owned.' " Given the private ownership of Jefferson Utilities, the zoning administrator awarded Jefferson Utilities with a score of 3 based on the ownership approach he adopted. Appellants Jefferson Utilities and Buckeye Development challenge this reasoning, asserting that the law does not support a construction that views only government owned water suppliers as entities who qualify under the Ordinance as providing public water under the meaning of the Ordinance provisions.

Appellants urge this Court to recognize that government ownership is not required to invoke the use of the term "public" for purposes of assessing the availability of water. As support for this position, they assert that the terms "public water system" and "public utility" are defined by state law in a manner that supports viewing Jefferson Utilities as a provider of public water, rather than as a central water system provider under the reasoning employed by the zoning administrator. Pursuant to statutes enacted to govern the public health system, a "public water system" is defined as

> any water supply or system that regularly supplies or offers to supply water for human consumption through pipes or other constructed conveyances, if serving at least an average of twenty-five individuals per day for at least sixty days per year, or which has at least fifteen service connections, and shall include: (1) Any collection, treatment, storage and distribution facilities under the control of the owner or operator of such system and used primarily in connection with such system; and (2) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system. . . .

W.Va.Code § 16-1-9a(a) (2001 & Supp.2005).

For purposes of applying laws adopted pertaining to the public service commission, the term "public utility" is defined by statute to mean "any person or persons, or association of persons, however associated, whether incorporated or not, including municipalities, engaged in any business, whether herein enumerated or not, which is, or shall hereafter be held to be, a public service." W.Va. Code § 24-1-2 (1979) (Repl.Vol.2004). This Court has previously held that the key to determining whether a "public utility" is involved is not the issue of the ownership of the entity providing the service, but instead whether that specific entity has dedicated or held out its services, such as gas; oil; electricity; or water, to the public in a manner that suggests that it is in the business of supplying the public, rather than a limited class of individuals, with a particular service. *See Wilhite v. Public Serv. Comm'n*, 150 W.Va. 747, 149 S.E.2d 273 (1966). In ruling that all public utilities, whether publicly or privately owned, are subject to the same treatment and supervision of the Public Service Commission in *State ex rel. City of Wheeling v. Renick*, 145 W.Va. 640, 651, 116 S.E.2d 763, 769 (1960), this Court interpreted

West Virginia § 24–1–2 to apply to privately owned suppliers of public services, such as Jefferson Utilities. *Accord* Syl. Pt. 7, *Affiliated Constr. Trades Found. v. Public Serv. Comm'n,* 211 W.Va. 315, 565 S.E.2d 778 (2002) (holding that "[e]lectric generation and transmission facilities intended solely for the sale of electricity on the wholesale market are within the statutory definition of public utility set forth in West Virginia Code § 24–2–1 (1991) (Repl.Vol.2001) whenever it appears that the electricity produced will, in the course of distribution, ultimately be sold to the public").

■ Jefferson Utilities is regulated by the Public Service Commission in connection with its provision of · water to citizens of Jefferson County, West Virginia, and clearly qualifies as a "public utility" under the laws of this State. *See* W.Va.Code § 24–1–2. The reasoning employed by the zoning administrator in requiring governmental ownership as a prerequisite to awarding the lowest score available for the amenities assessment element of "public water availability" fails to withstand scrutiny. It is the fact of the water availability itself· and not the ownership of the entity providing such water that controls the issue. Rather than focusing singularly on the word "public," as the zoning administrator appears to have conducted his analysis, the critical component of this portion of the amenities assessment is the fact of the *availability* of water that can be distributed to potential land owners—i.e. the "public." Regardless of whether the water supplier's ownership is private or public, the key component at issue is the availability of water. When the Legislature recently adopted a comprehensive land use planning schema, the term "utility" was expressly defined .to include distribution of services by private entities. *See* W.Va.Code

§ 8A–1–2(ff) (2004 & Supp.2005) ("Utility" means a public or private distribution service to the public that is regulated by the "Public Service Commission."). Accordingly, we hold that a privately owned entity engaged in providing water services to the public that qualifies as a "public utility" or "utility" under state law is entitled to be viewed as providing "public water" for purposes of calculating the requisite land evaluation and site assessment phase of the development review system required by the Ordinance. Application of this ruling requires that under the facts of this case, Jefferson Utilities would be entitled to the lowest LESA score possible for the provision of public water, that is a "0," rather than the "3" that was awarded by Mr. Raco.

## B. Zoning Administrator's Authority

■ First, in the Jefferson Utilities matter and then second, in the consolidated Kletter cases,[12] the trial court undertook to identify the role and authority of the zoning administrator. Looking to statutory language which refers to the actions that the Board can take with reference to "administrative rulings," the circuit court concluded that such language required that the Board review all matters appealed to it from a zoning administrator pursuant to a *de novo* standard. W.Va.Code § 8–24–55 (1969) (Repl.Vol.2003). In both of the opinions at issue in this consolidated matter, the circuit court concluded *sua sponte* that the Board was without authority to accord any deference to determinations reached by a zoning administrator based on the applicable standard of review.[13] *See id.*

In deciding that the authority of the zoning administrator was severely limited, the trial court looked to the language of West Virginia

12. In the July 12, 2004, ruling issued in the consolidated Kletter cases, the trial court restated in their entirety the rulings and reasoning from the July 9, 2004, ruling in the Jefferson Utilities case on the issue of the role of the zoning administrator and the ·lack of deference to be accorded by the Board to decisions issued by the zoning administrator.

13. Through its ruling, the circuit court appears to have been attempting to circumvent additional instances wherein it would be obligated, based

on this Court's ruling in *Corliss,* to defer to the Board's and/or Commission's decision(s) to adopt findings by the zoning administrator on issues such as the sufficiency of support data offered in connection with a conditional use permit application. *See* 214 W.Va. at 542–43, 591 S.E.2d at 100–01 (observing that "the record in this case suggests that the lower court overlooked its duty to give the appropriate amount of deference to the administrative decision and Zoning Board's· affirmance of that decision regarding the adequacy of the support data").

Code § 8–24–55 setting forth the actions that a board of zoning appeals may take upon its review of administrative rulings:

> In exercising its powers and authority, the board of zoning appeals may reverse or affirm, in whole or in part, or may modify the order, requirement, decision or determination appealed from, *as in its opinion ought to be done in the premises*, and to this end shall have all the powers and authority of the official or board from whom or which the appeal is taken.

W.Va.Code § 8–24–55 (emphasis supplied). From this language alone, the trial court concluded that the Board's power of review with regard to determinations made by the zoning administrator is *de novo*. Because the Board gave deference to certain factual determinations made by Mr. Raco,[14] the circuit court concluded that the Board had applied an erroneous principle of law which required reversal. *See Wolfe*, 159 W.Va. at 35, 217 S.E.2d at 900, syl. pt. 5.

In attempting to define the authority of the zoning administrator, the trial court limited its analysis to one statutory provision that authorizes a municipal or county planning commissions to "[d]elegate to employees authority to perform ministerial acts in all cases except where final action of the commission is necessary." *See* W.Va.Code § 8–24–14(5) (1969) (Repl.Vol.2003). Because the enabling legislation that creates such planning commissions permits the hiring of employees for the accomplishment of ministerial acts combined with the fact that the Ordinance provides that the zoning administrator will be "under the direct supervision of the Planning and Zoning Commission,"[15] the tri-

al court concluded that a zoning administrator is necessarily someone hired by the commission *solely* to "perform ministerial acts."[16] W.Va.Code § 8–24–14(5).

This narrow reasoning, which focuses solely on a planning commission's authority to hire individuals for routine administrative matters that are ministerial in nature,[17] fails to appreciate that the enabling legislation grants additional authority to planning commissions. The same statutory provision that authorizes the hiring of ministerial employees also grants to a planning commission general authority to "[p]rescribe the qualifications of, appoint, remove and fix the compensation of, the employees of" the commission. W.Va.Code § 8–24–14(4); *see also* W.Va.Code § 8–24–12 (1969) (Repl.Vol.2003) (granting authority for hiring of employees "necessary for the discharge of the duties and responsibilities of the commission"). Under the Jefferson County ordinance, the zoning administrator is supposed to be hired by the planning commission. Consequently, the job duties and responsibilities assigned to the zoning administrator are to be determined by the planning commission or the ordinance language setting forth the duties of the zoning administrator. Contrary to the circuit court's approach to this issue, the "ministerial acts" statutory language is not the sole basis for identifying the zoning administrator's authority or job description. W.Va.Code § 8–24–14(5).

As additional authority for the creation of the zoning administrator position, we have previously recognized that county commissions and municipalities derive their general

---

**14.** The only finding identified by the circuit court with regard to the issue of the Board's improper deference to the zoning administrator is the determination that the support data submitted in connection with each of the developments at issue is sufficient.

**15.** Of note, however, is the fact that the trial court openly recognized that despite the language quoted from the Ordinance, "at no time had the Planning Commission had any authority over the Zoning Administrator." Consequently, the trial court knew that part of what it hinged its reasoning on—the employment of the zoning administrator by the planning commission—was not a reality. Rather than alter its approach to the issue, however, the trial court merely acknowledged that "the County Commission has

made organizational changes relative to the administration of the Ordinance that are ... at odds with its express terms."

**16.** In its July 12, 2004, order the circuit court opined that the zoning administrator's "grant of power is expressly limited by statute to 'ministerial' functions." According to the trial court, the "limits of the role" of zoning administrator are totally encompassed within the provisions of West Virginia Code § 8–24–14(5).

**17.** *See, e.g.*, Syl. Pt. 8, *Kaufman v. Planning & Zoning Comm'n*, 171 W.Va. 174, 298 S.E.2d 148 (1982) (holding that "[w]hen an applicant meets all requirements, plat approval is a ministerial act and a planning commission has no discretion in approving the submitted application").

authority to adopt zoning ordinances from West Virginia Code § 8–24–39 (1988) (Repl. Vol.2003). *See Dewey v. Board of Zoning Appeals,* 185 W.Va. 578, 581, 408 S.E.2d 330, 333 (1991); *Wolfe,* 159 W.Va. at 39, 217 S.E.2d at 903. That statutory provision expressly grants authority to municipalities and county commissions for the implementation of zoning laws. We have further observed that the enactment of a zoning ordinance is an exercise of the broad police power of the state, as delegated to the local governing body. *See Par Mar v. City of Parkersburg,* 183 W.Va. 706, 709, 398 S.E.2d 532, 535 (1990).

An integral part of extending the state's police powers to local governing bodies is the related enforcement powers that are implicitly granted to such bodies for the purpose of carrying out local laws. *See State ex rel. State Line Sparkler v. Teach,* 187 W.Va. 271, 275, 418 S.E.2d 585, 589 (1992) (recognizing that "[t]he general rule is that a grant of the police power to a local government or political subdivision necessarily includes the right to carry it into effect and empowers the governing body to use proper means to enforce its ordinances"). These principles are illustrated in the case at bar by the fact that the County Commission has reposed in the Planning Commission the responsibility for effectuating various laws, such as zoning matters, that pertain to land use. In turn, fulfillment of that responsibility for land use governance requires the employment of both employees and administrators. Central to the administration of the Ordinance under discussion is the position of zoning administrator.

The following Ordinance provisions address the responsibilities assigned to the zoning administrator:[18]

Section 3.2 *Zoning Administrator*

(a) It shall be unlawful to develop, construct, alter, or reconstruct any structure or to change the use of any structure or property without first obtaining a zoning certificate from the Zoning Administrator. . . .

\* \* \* \* \* \*

(b) Use of any property, developmental arrangement, or construction on any property other than that authorized in the zoning certificate is a violation of this Ordinance. . . .

\* \* \* \* \* \*

Section 3.3 *Enforcement*

(a) The Zoning Administrator shall promptly investigate any written complaint alleging a violation of this Ordinance and determine if a violation has occurred.

In addition to the above provisions, the Ordinance grants the zoning administrator the responsibility for making determinations of prohibited uses of land in section 4.4 and further charges the zoning administrator in section 7.4 with the duty for determining whether the sketch plan and support data required as part of the DRS "are adequate." The Board maintains that these duties impliedly require the exercise of some discretion. As additional support for its position, the Board posits that the appeal, which is statutorily provided by West Virginia Code § 8–24–55, would not be necessary if the zoning administrator was charged only with the execution of ministerial duties—ones that involved no element of discretion. We agree.

Review of the Ordinance provisions demonstrates that the purely ministerial box into which the circuit court attempts to make the

**18.** Based on amendments to the Ordinance that went into effect on April 8, 2005, the Zoning Administrator's position is now defined in greater detail:

Section 3.2 *Zoning Administrator*

(a) The Zoning Administrator shall administer and enforce the Zoning Ordinance. This includes but is not limited to the following:

(1) Make determinations that all applications required by the Ordinance are complete and that all fees are paid.

(2) Interpret the provisions of the Ordinance as required by law.

(3) Issue Zoning Certificates as permitted by the Ordinance.

(4) Calculate the LESA point scores and determine the adequacy of the Support Data for all applications for a Conditional Use Permit.

(5) Issue all Permits and Certificates as permitted by the Ordinance.

(6) Prepare and submit reports as required by the Ordinance or the Board of Zoning Appeals or Planning Commission.

(7) Conduct meetings and conferences pursuant to the Zoning Ordinance.

position squarely fit does not accurately reflect what is required of the zoning administrator to effectuate the duties he or she is charged with performing. For example, in charging the zoning administrator with the duty to determine in the first instance whether the sketch plan and support data submitted in support of a conditional use permit "are adequate," the drafters of the Ordinance reposed the individual responsible for fulfilling the duties that accompany this position with a certain amount of discretion. Other courts have had little difficulty in concluding that a zoning administrator is charged with varying amounts of discretion for the performance of his or her respective duties, and that the degree of discretion reposed in such individual is determined by the terms of the ordinance. In *Biser v. Deibel*, 128 Md.App. 670, 739 A.2d 948 (1999), the appellate court affirmed the trial court's determination that the zoning administrator "acted in a discretionary capacity." *Id.* at 953. In discussing the issue of the zoning administrator's discretion, the appellate court found evidence for such exercise in the provision of the zoning ordinance that provided: "It shall be the duty of the Zoning Administrator to issue a Zoning Certificate provided he [or she] is *satisfied* that the building or premises and the proposed use thereof conform with all the requirements of this Ordinance." *Id.* The court reasoned that the zoning administrator was "required to exercise her judgment" when making determinations relevant to the issuance of a permit, and that these decisions were not "ministerial" in nature. *Id.; accord West Coast Advert. Co. v. City and County of San Francisco*, 256 Cal.App.2d 357, 64 Cal. Rptr. 94, 96 (Cal.App.1967) (holding that zoning administrator acted within his discretion in denying application for permit to construct billboard); *Community Housing Trust v. Dep't of Consumer and Reg. Affairs*, 257 F.Supp.2d 208, 214 n. 7 (D.D.C.2003) (noting that zoning administrator had discretion regarding classification of house within one of seven categories); *Ancient Art Tattoo Studio v. City of Virginia Beach*, 263 Va. 593, 561 S.E.2d 690, 692–93 (2002) (finding that zoning administrator's decision regarding classification of tatoo parlor was "discretionary and was not the performance of a purely ministerial duty"); *Door County Envtl. Council v. Door County*, 616 N.W.2d 923 (Wis.2000)

(recognizing that zoning ordinance "specifically gives discretion to the zoning administrator to determine when an application for a particular use provides sufficient information") (unpublished decision). Consequently, we are compelled to conclude that the position of zoning administrator necessarily entails the use of limited amounts of discretion in complying with the provisions of the Ordinance.

As support for its contention that the position of zoning administrator is solely ministerial in nature, the circuit court looked to a decision issued by the North Carolina Supreme Court in *County of Lancaster v. Mecklenburg County*, 334 N.C. 496, 434 S.E.2d 604 (1993), in which the appellate court examined the distinctions between administrative and quasi-judicial zoning decisions. At issue was the constitutionality of a county zoning ordinance that authorized a zoning administrator to make a determination as to the fulfillment of six conditions as a prerequisite to approving a zoning permit application for the siting of a landfill. *Id.* at 607. In upholding the delegation of power by the county commission to the zoning administrator to issue landfill permits on a due process challenge, the North Carolina Supreme Court examined whether the zoning administrator's decision was a quasi-judicial zoning decision or a routine administrative matter. The appellate court reasoned as follows:

Zoning decisions are typically characterized as being in one of four different categories—legislative, advisory, quasi-judicial, and administrative. In this case, the question is whether the issuance of a permit for a landfill as a permitted use with prescribed conditions is properly characterized as a quasi-judicial decision or as an administrative zoning decision.

In making quasi-judicial decisions, the decisionmakers must "investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, *and to exercise discretion of a judicial nature.*" *In the zoning context, these quasi-judicial decisions involve the application of zoning policies to individual sit-*

*uations, such as variances, special and conditional use permits, and appeals of administrative determinations.* These decisions involve two key elements: the finding of facts regarding the specific proposal and the exercise of some discretion in applying the standards of the ordinance.

Administrative decisions are routine, nondiscretionary zoning ordinance implementation matters carried out by the staff, including issuance of permits for permitted uses. In general, the zoning administrator is a purely administrative or ministerial agent following the literal provisions of the ordinance. *The zoning administrator may well engage in some fact finding, as in making an initial determination as to whether a nonconforming use was in existence at the time a zoning ordinance was adopted. But, in such instances, this involves determining objective facts that do not involve an element of discretion.*

434 S.E.2d at 612 (citations omitted and emphasis supplied).

The appellate court in *Mecklenburg County* concluded that the zoning decision was an administrative decision rather than a quasi-judicial determination, which would have required an evidentiary hearing and the use of fair trial standards. While the circuit court in the case at bar placed great emphasis on language opining that the zoning administrator was not using "discretion" when he applied fact-finding to ordinance provisions, it was not the use of a nominal degree of discretion in *Mecklenburg County* that was key to declaring whether fair trial procedures were required, but instead the *nature* of the decision-making process at hand. If the decision required the use of fair trial procedures by the nature of the matters being addressed, then a quasi-judicial decision process was involved. Conversely, such procedures were not required if the decision was the type of administrative matter routinely capable of being resolved by the zoning administrator along with advice from his staff.

Just as the Jefferson County Zoning Administrator is called upon to use discretion in limited situations when applying the provisions of the Ordinance, the zoning administrator involved in the *Mecklenburg County* case was similarly required to engage in the application of specific facts to the provisions of the county ordinance at issue in that case. The North Carolina Supreme Court upheld the County Board of Commissioners' characterization of instances where the zoning administrator had to apply specific facts to make a determination regarding a specific factor or condition under the ordinance as an "objective finding." Examples of such objective findings included when the zoning administrator was required to determine whether the anticipated future use of the property was consistent with the county's land use plan and whether the cost estimates for reclamation were " 'reasonable.' " 434 S.E.2d at 614. Despite the fact that the court in *Mecklenburg County* preferred to shroud the occasional employment of discretion by a zoning administrator in terms of an "objective finding," this does not mean that discretion was not employed in making those decisions. *Id.* More importantly, while the North Carolina appellate court may have arguably sidestepped the exercise of discretion by a zoning administrator, it correctly formulated the process for determining whether an administrative decision requires the enhanced protections attendant to quasi-judicial proceedings.

In explaining how the zoning permit decision at issue in *Mecklenburg County* was not a "special use" zoning decision, one that would clearly involve the due process protections attendant to a quasi-judicial proceeding, the North Carolina court explained: "It is not the terms used by the ordinance to describe these permits that has legal significance; *it is whether the nature of the decision to be made is, in fact, quasi-judicial or administrative.*" 434 S.E.2d at 613 (emphasis supplied). In the same vein then, the critical factor in determining whether the use of some limited discretion by a zoning administrator requires the additional protections that typically attach in evidentiary proceedings is whether the determination being made is one that qualifies as administrative or quasi-judicial in nature.

As the court was quick to acknowledge in *Mecklenburg County* "quasi-judicial special use permit decisions may not be assigned to the zoning administrator." 434 S.E.2d at

613. Those proceedings, which entail the presentation of evidence and the making of findings, are clearly quasi-judicial in nature. Like the ordinance under review in *Mecklenburg County,* the Ordinance at issue in the case *sub judice* does not permit the zoning administrator to issue a conditional use permit.[19] Such a decision would clearly be outside the realm of the administrative functions he or she is charged with performing under the Ordinance. But the fact that the zoning administrator makes LESA determinations as an initial fact gatherer that are then looked to by the Board and ultimately the Planning Commission in deciding whether to issue a conditional use permit does not elevate the factual determinations reached by the zoning administrator to quasi-judicial in nature. The determinations made by the zoning administrator clearly do not involve the type of issues that require due process protections such as evidence production; cross-examination; document inspection; and sworn testimony. *See Mecklenburg County,* 434 S.E.2d at 612. Consequently, the fact that some minimal degree of discretion is involved by the zoning administrator in making his/her determinations regarding the LESA score does not remove the decisions reached by the zoning administrator from the administrative realm. *See id.*

█ The nature of the decisions required to be made by the zoning administrator are, as a rule, administrative in nature. Where a local ordinance requires the application of a finding of fact to a provision of an ordinance to make a specific determination, that determination may indeed involve the exercise of some discretion. This fact alone—the exercise of discretion or judgment in applying facts to a provision of the Ordinance—is insufficient to transform a finding made by a zoning administrator into a quasi-judicial determination. Only those decisions that clearly demand that due process standards be utilized in reaching the decision at hand can transform an otherwise administrative decision into a quasi-judicial determination. From the record before us, we do not see any indication that the determinations complained of that the zoning administrator

reached (i.e. sufficiency of submitted support data) were of the nature that required the application of such standards.

In its haste to defrock the zoning administrator of authority to exercise even a limited amount of discretion in applying the duties he or she is charged with administering under the Ordinance, the lower court disregarded established principles of administrative and property law, as well as the fact that the law seeks to avoid absurd results. *See Charter Commun. VI, v. Comm. Antenna Serv., Inc.,* 211 W.Va. 71, 77, 561 S.E.2d 793, 799 (2002) (recognizing that "[i]t is the 'duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results' ") (quoting *State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990)). The circuit court overlooked the necessity for allowing the individual who holds this position to exercise limited amounts of discretion. The day-to-day decisions that are demanded of the zoning administrator cannot be postponed until the Board, a group of unpaid lay people who lack a comparable degree of expertise that the zoning administrator along with his/her staff have by virtue of their customary application of zoning procedures, holds its monthly or bi-monthly meetings. If the decisions typically made by the zoning administrator are transferred to the Board or the Planning Commission, the Board maintains that those bodies would be overwhelmed by the sheer volume of decisions that are routinely presented and which require prompt attention. Zoning matters would virtually grind to a halt if this Court were to adopt the position articulated by the circuit court.

█ The lynchpin on which the trial court based its rulings regarding the erroneous application of a legal principle was its conclusion that the zoning administrator's decisions were not entitled to any deference by a reviewing body such as the Board. We reject the trial court's reasoning and hold that the provisions of West Virginia Code § 8–24–55, which set forth the authority and

---

**19.** Under the Ordinance, it is the Planning Commission that is charged with the responsibility for issuing a conditional use permit.

power of a board of zoning appeals, do not expressly or implicitly prevent that administrative body from utilizing principles of deference typically employed in administrative proceedings in reviewing determinations reached by a zoning administrator. *See, e.g., Corliss,* 214 W.Va. at 542, 591 S.E.2d at 100 (discussing weight to be accorded to administrative bodies charged with handling zoning matters). Moreover, the fact that the Board has the power to reverse, affirm, or modify does not mean that the Board cannot defer to specific factual findings reached by the zoning administrator. *See* W.Va.Code § 8–24–55. It is this Court's opinion that the statutory powers of review extended to the Board by West Virginia Code § 8–24–55 place the decision of when, or if, to defer to a specific decision reached by a zoning administrator within the prerogative of the Board. Consequently, the fact that the Board adopts a finding reached by the zoning administrator, such as the adequacy of the support data submitted in connection with a conditional use application, is not fatal with regard to a Board's review of a zoning matter. To conclude otherwise would require a duplication of efforts that simply is not required or warranted. While we certainly recognize that the review mechanism established by West Virginia Code § 8–24–55 plays a vital role with regard to challenged zoning matters, there is no basis for concluding that this review process mandates that the Board is required to start from scratch in conducting its review of a matter before it. *Cf.* W.Va. Code § 8–24–64 (1969) (Repl.Vol.2003) (expressly providing that circuit court's review of appealed zoning matters shall not "be by trial de novo"). Moreover, we decline to label the powers of review set forth in West Virginia Code § 8–24–55 for zoning boards of appeal as entailing *de novo* review.[20] As a quasi-judicial body[21] created by statute, the powers of review afforded to a zoning board of appeals are delineated solely by statute

and should not be analyzed under standards that apply to judicial determinations. *See Dewey,* 185 W.Va. at 582, 408 S.E.2d at 334 (recognizing that scope of zoning board's authority is determined by W.Va.Code § 8–24–55).

### C. Non–Residue Parcel Development

■ In its September 9, 2003, order, the trial court found the Board in error with regard to its decision that a non-residue rural parcel can be subdivided under the Ordinance even if the parcel at issue was not on record as of October 5, 1988. While the circuit court essentially wiped the slate clean of all the substantive issues it ruled upon in its September 9, 2003, order by finding the Board to have committed error in deferring to any decisions of the zoning administrator and remanding the entire matter for further proceedings,[22] the Board and Buckeye Development have both requested that this legal issue be resolved so that this same issue will not have to be re-litigated following remand.

At the center of this particular dispute is language in the Ordinance that provides in section 5.7(d) that: "All parcels of land that were on record as of October 5, 1988 are entitled to subdivide for single family detached residences based on Subsections 5.7(d)1, 5.7(d)2 or 5.7(d)3 below. A property owner may use a combination of these subsections, provided that the number of lots are prorated by density." The circuit court, in interpreting this language, concluded that unless a parcel was of record as of October 5, 1988, or is the residue of a prior subdivision of such parcel, there could be no additional subdivision of that property.[23] This ruling was counter to the decision reached by the Board on this issue.

In resolving this same issue, the Board looked to the entirety of section 5.7 of the Ordinance to the language in the introducto-

---

**20.** In other instances, the Legislature has expressly declared the reviewing administrative body's powers as being *de novo* in nature. *See, e.g.,* W.Va.Code § 22B–1–7(e) (2003) (Repl.Vol. 2005) (requiring that Surface Mine Board conduct *de novo* review of decisions issued by Department of Environmental Protection).

**21.** *See Wolfe,* 159 W.Va. at 45, 217 S.E.2d at 906.

**22.** In its July 12, 2004, order, the trial court ruled that "[i]t necessarily follows ... that the substantive conclusions of this Court in the original Opinion Order [September 9, 2003] are not binding upon the Board in its review on remand."

**23.** All three of the developments at issue are proposed to be built on a tract of land that was subdivided in 1992.

ry paragraph to that section that closes with these two sentences: "All lots subdivided in the Rural District are subject to Section 5.7d Maximum Number of Lots Allowed. The Development Review System does allow for higher density [if] a Conditional Use Permit is issued." The Board concluded that rather than being a total ban on further subdivision, the language in section 5.7(d) which references the time periods applicable for subdivision for lots in existence on October 5, 1988, merely requires that property owners desiring development of parcels not in existence in October 1988 are required to go through the procedural mechanisms set forth in the Ordinance to obtain a conditional use permit. The Board reasoned as follows in one of the Kletter cases involving the Daniels Forest proposed development:

> The Board concludes that the Conditional Use Permit process allows a prospective subdivider to subdivide the property into greater number of lots with a greater density than may be allowed in the rural district pursuant to section 5.7, Zoning Ordinance. The Board concludes that section 5.7(d)(3 and 4) does not apply in the stage of the proceedings. The developer seeks to subdivide his property into a greater number of lots than may be allowed by section 5.7. The developer may only do this if he complies with the Conditional Use Permit process and obtains the permit. Therefore the board concludes that the limitation set forth in section 5.7 pertaining to the subdivision of a residue or parent parcel are not applicable at this stage of the process.

In disregarding the Boards's interpretation of a law that it is charged with enforcing, the circuit court violated the tenet of administrative law that interpretations by administrative bodies charged with enforcement responsibilities are "given great weight unless clearly erroneous." *See* Syl. Pt 4, in part, *Security Nat'l Bank & Trust Co. v. First W.Va. Bancorp*, 166 W.Va. 775, 776, 277 S.E.2d 613, 614. Just as in *Corliss*, the trial court substituted its judgment in its September 9, 2003, order for that of the administrative body charged with enforcing the Ordinance, declaring that "the goals of the Comprehensive Plan and the purposes of the Ordinance are not implemented by the process urged by the Respondent and the Intervenors [use of the conditional use permit application process]." As in *Corliss*, we are hard pressed not to conclude that the trial court wrongly refused to grant the appropriate amount of deference to one of the administrative bodies charged with responsibility for enforcing the Ordinance. While the trial court declared the Board's interpretation of section 5.7 to be in error, we find no firm basis for reaching that conclusion. Accordingly, we conclude that the Board's interpretation of section 5.7 as allowing the conditional use permit application process as the specified procedural mechanism for seeking approval for development of property that was not a parcel in existence on October 5, 1988, is a valid interpretation of the Ordinance, given that the language authorizing the use of the conditional use permit application process immediately follows the language which pertains to the Ordinance provisions referencing the maximum number of lots that can be developed.

Based on the foregoing, the decisions of the Circuit Court of Jefferson County entered on July 9 and 12, 2004, are hereby reversed and the matters are remanded for further proceedings consistent with the holdings contained in this opinion.[24] With respect to those appeals in the Kletter case in which the board of zoning appeals previously issued the requested conditional use permits,

24. In its July 12, 2004, order, the trial court exceeded the scope of the Rule 60(b) motion that was before it by addressing the scope of the zoning administrator's position and authority and by finding that the Board failed to apply a *de novo* standard of review. While we were required to address both of those issues to resolve the appeals before us, we specifically decline to address the additional matters that the trial court ruled upon that were clearly not presented by the Rule 60(b) motion. Those additional rulings involved the trial court's opinion that the County Commission usurped the Board's authority to adopt rules and the concomitant directive that the Board adopt separate rules from those set forth in the Ordinance. In addition, the trial court determined that certain findings of fact reached by the Board were essentially unreviewable at this stage of the appeal and yet these same findings had been reviewed previously by the circuit court with no comparable finding in its September 9, 2003, order.

the lower court relied upon improper grounds to reverse those administrative decisions; consequently, the trial court is hereby directed to enter an order approving the reissuance of the subject permits and adjust, where necessary, any time deadlines established in the Ordinance that may have passed during the pendency of this appeal so that the parties are not penalized for pursuing their statutory rights of appeal.

Reversed and remanded.