STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**October 7, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Central Place, LLC,**
**Petitioner Below, Petitioner**

**vs) No. 15-1057**        (Monongalia County 15-C-245 and 15-C-358-consolidated below)

**The City of Morgantown**
**Planning Commission, City of**
**Morgantown Board of Zoning**
**Appeals, and Campus Acquisitions**
**Holding, LLC,**
**Respondents Below, Respondents**

## MEMORANDUM DECISION

Petitioner Central Place, LLC, by counsel Samuel H. Simon, Matthew L. Lautman, and J. Bryan Edwards, appeals the October 6, 2015, order of the Circuit Court of Monongalia County that denied its petitions for writs of certiorari filed in connection with the approval of a site plan submitted by Respondent Campus Acquisitions Holding, LLC ("Campus Acquisitions") for the development of certain mixed-use dwelling property in the City of Morgantown. Respondent Campus Acquisitions, by counsel Stephen M. LaCagnin and Wendy G. Adkins, and Respondents City of Morgantown Planning Commission ("Planning Commission") and City of Morgantown Board of Zoning Appeals ("BZA"), by counsel Ryan P. Simonton, filed responses. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 6, 2015, Campus Acquisitions filed with the Planning Commission an application for review of a Type III Site Plan ("Site Plan") for a proposed development in the City of Morgantown's B-4 General Business District. The Site Plan proposed a building height of 120 feet or less; 89 residential dwelling units, with a total of 331 bedrooms; 157 parking spaces for residential use; and 7,649 square feet of nonresidential space that included 3,435 square feet of commercial retail space with the remainder of the nonresidential space for use by building tenants and staff.

Petitioner owns a property that is adjacent to the proposed development. On March 11, 2015, petitioner filed an application for administrative appeal seeking a review by the BZA of

"multiple erroneous determinations" about the Site Plan made by a Staff Report of the Morgantown Director of Development Services office.

Meanwhile, on March 12, 2015, the Planning Commission approved the Site Plan.

On April 10, 2015, petitioner filed a petition for writ of certiorari in the Circuit Court of Monongalia County seeking judicial review of the Planning Commission's approval of the Site Plan,[1] and also filed an application for administrative appeal with the BZA seeking its review of the Planning Commission's decision. With the consent of the parties, the BZA combined the March 11, 2015, application for administrative appeal with the one filed on April 10, 2015. A hearing was conducted on May 7, 2015; thereafter, the BZA upheld the Planning Commission's approval of the site plan.

On June 4, 2015, petitioner filed a second petition for writ of certiorari in which it sought review of the BZA's decision to uphold the Planning Commission's approval of the Site Plan.

By order entered May 21, 2015, Campus Acquisitions was permitted to intervene in the above-described proceedings and, by agreed order entered June 15, 2015, the certiorari proceedings were consolidated. By order entered October 6, 2015, the circuit court denied the petitions and affirmed the decisions of the Planning Commission and BZA approving Campus Acquisitions' Site Plan. This appeal followed.

This case requires a review of certiorari orders issued by the circuit court. "This Court applies an abuse of discretion standard in reviewing a circuit court's certiorari judgment." Syl. Pt. 2, *Jefferson Orchards, Inc. v. Jefferson Cty. Zoning Bd. of Appeals,* 225 W.Va. 416, 693 S.E.2d 781 (2010). The same standard of review utilized by the circuit court also applies to our review of this matter. As this Court explained in *Webb v. West Virginia Bd. of Med.,* 212 W.Va. 149, 569 S.E.2d 225 (2002), "[o]n appeal, this Court reviews the decisions of the circuit court under the same standard of judicial review that the lower court was required to apply to the decision of the administrative agency." *Id.,* 212 W.Va. at 155, 569 S.E.2d at 231; *accord Martin v. Randolph Cnty. Bd. of Educ.,* 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995).

"'Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.' Syl. Pt. 4, *Security Nat'l Bank & Trust Co. v. First W. Va. Bancorp.,* 166 W.Va. 775, 277 S.E.2d 613 (1981)." Syl. Pt. 3, *Corliss v. Jefferson Cty. Bd. of Zoning Appeals*, 214 W. Va. 535, 591 S.E.2d 93 (2003). However, in syllabus point 5 of *Wolfe v. Forbes,* 159 W.Va. 34, 217 S.E.2d 899 (1975), this Court held "[w]hile on appeal there is a presumption that a board of zoning appeals acted correctly, a reviewing court should reverse the administrative decision where the board has applied an erroneous principle of law, was plainly wrong in its factual findings, or has acted beyond its jurisdiction." *See also* Syl. pt. 1, *Jefferson Utilities, Inc. v. Jefferson Cty. Bd. of Zoning Appeals*, 218 W.Va. 436, 624 S.E.2d 873 (2005). With these standards in mind, we consider the parties' arguments.

---

[1] *See* W.Va. Code § 8A-9-1(a), which states that "[e]very decision or order of the planning commission, board of subdivision and land development appeals, or board of zoning appeals is subject to review by certiorari."

2

In its first assignment of error, petitioner argues that the circuit court erred in affirming the Planning Commission's finding that the proposed development does not violate the prohibition against driveways in the B-4 General Business District from coming within thirty feet of other driveways, as set forth in City of Morgantown, Codified Ordinances § 1351.01(D) (2015) ("Morgantown City Code"). Morgantown City Code § 1351.01(D) states as follows:

> Curb Cuts. No part of a driveway leading from a public street shall be nearer than thirty-five (35) feet to the street right-of-way line of any intersecting street, nor nearer than thirty (30) feet to the end of a curb radius at an intersecting street, nor shall the driveway be nearer than thirty (30) feet to any other part of another driveway entering a public street. The maximum width of any driveway leading from a public street shall not exceed twenty-six (26) feet at the curb line or twenty-two (22) feet at the street right-of-way line. Driveways that cross pedestrian walks shall be designated to allow for barrier free pedestrian travel.

The configuration of the driveway at issue, as it relates to petitioner's driveway, appears to be undisputed. The proposed development will have two entrances to its internal and external parking facilities, one on Spruce Street and the other on Willey Street. At the point of exit/entry onto the street, the Willey Street driveway is separated from petitioner's driveway by at least thirty feet. However, other parts of the Willey Street driveway run less than five feet from the property boundary. It is petitioner's contention that Morgantown City Code § 1351.01(D) clearly prohibits driveways from coming nearer than thirty feet to *any other part of another driveway* that leads to or from a public street and that, therefore, the path of the above-described driveway violates this provision.

Respondents counter that the circuit court did not err in affirming the lower tribunals' rulings that the required separation between the driveways is measured from the portions of the driveways that enter onto or lead from a public street, which, as the ordinance's heading denotes, are the tangents of the respective curb cut flares and the curb lines. Respondents argue that the remaining portions of a driveway are not regulated by Morgantown City Code § 1351.01(D). Petitioner argues that although the ordinance's heading is entitled "curb cuts," it is undisputed that the text of the applicable ordinance does not include or otherwise refer to such phrase, nor does it state that portions of a driveway within a property are excluded from the distance requirements. Petitioner argues further that the lower tribunals violated the rules of construction set forth in the city's ordinance by allowing the heading of § 1351.01(D) to dictate the meaning of its operative text. As Morgantown City Code § 1329.01(B) specifically states, "[i]n the event there is any conflict or inconsistency between the heading of an article, section, subsection, or paragraph of this ordinance and the context thereof, the heading shall not be deemed to affect the scope, meaning, or intent of such context."

We agree with respondents and find no error in the circuit court's conclusion that the "curb cuts" heading is not inconsistent with the operative text of the ordinance. The heading clarifies that the thirty foot separation requirement pertains only to the "part of another driveway entering a public street"—that is, the curb cut. It is undisputed that Campus Acquisition's Site Plan of the proposed development shows that the curb cuts will be at least thirty feet from all adjacent curb cuts, including the one on petitioner's property. This is in conformity with the

distance requirements set forth in Morgantown City Code §1351.01(D). We, therefore, conclude that the circuit court gave appropriate deference to the interpretation of §1351.01(D) by the Planning Commission and BZA and did not err.

In its next assignment of error, petitioner argues that the circuit court erred in affirming the lower tribunals' findings that the proposed development has the requisite number of parking spaces for a mixed-use dwelling. The circuit court concluded that the Planning Commission and BZA were not clearly wrong in applying the B-4 General Business District minimum parking requirements set forth in Morgantown City Code § 1349.08 to the proposed development, which includes 89 dwelling units with 331 bedrooms and 7,649 square feet of nonresidential space.

The circuit court concluded that, under Morgantown City Code § 1349.08, proposed developments within the City of Morgantown's B-4 General Business District must comply with the following parking requirements:

(1) Residential: Parking shall not be required for the first twenty-two (22) occupants, as determined by the West Virginia State Building Code and adopted and implemented by the City, within permitted residential development. With the exception of the first twenty-two (22) occupants, the minimum number of parking spaces for permitted residential uses shall be one-half a space (0.5) per occupant, as determined by the West Virginia State Building Code and adopted and implemented by the City.

(2) Nonresidential: Parking shall not be required for permitted nonresidential development which does not meet or exceed the criteria of a Development of Significant Impact or a Major Development of Significant Impact. The minimum number of parking spaces for permitted nonresidential uses shall be provided in accordance with Table 1365.04.01 "Minimum Off-Street Parking Requirements" for that gross floor area that exceeds the criterial of a Development of Significant Impact or a Major Development of Significant Impact.

*Id*.

The circuit court further determined that "[t]he only applicable parking limitation for 'Dwelling, Mixed Use' developments within the B-4 District is the requirement that they have 'at least one (1) parking space for each residential unit, plus twenty-five (25) percent of the usual non-residential parking requirement.'" *See* Morgantown City Code § 1331.06(26)(c). Applying the foregoing formula, the minimum number of parking spaces required for the development was 155 spaces for residential use, and no additional parking for the development's nonresidential uses.[2] The current allotment of off-street parking for Campus Acquisitions' proposed development is 157 parking spaces, which exceeds the required number.

Petitioner argues that the circuit court should have applied the general off-street parking requirement formula for a "Dwelling, Mixed Use," which, under Morgantown City Code §

---

[2] This was based upon the following calculation: $(331-22) \times 0.5 = 155$.

1329.02, refers to a building containing primarily residential uses with a subordinate amount of commercial and/or office uses on the ground floor. Petitioner argues that Campus Acquisitions' own documents indicate that the land-use classification for the proposed development is "Dwelling, Mixed Use," and also reference the ordinance's supplemental regulations for "Mixed Use Dwelling Units." The minimum parking requirements for such a development are "1 space per dwelling unit or 0.75 spaces per occupant . . . whichever is greater, plus required spaces for commercial use(s). *See* Morgantown City Code Table § 1365.04.01. According to petitioner, the resulting calculation is 331 x 0.75 = 248.25 spaces, which figure does not take into account any of the additional parking spaces that would be required for nonresidential use under Table § 1365.04.01, or any of the conditional use parking reductions available to developments located within the B-4 General Business District. Petitioner argues that the 157 allotted off-street residential parking spaces for the proposed development are far short of this required number, with no spaces allotted for commercial use even though the building was designed to include both residential housing and commercial uses.

We find no error. The circuit court expressly noted that it considered petitioner's argument under the "Dwelling, Mixed Use" ordinance requirements. However, the circuit court also considered the stated purpose of the B-4 General Business District, which is to "[p]romote development of a compact, pedestrian-oriented central business district consisting of a high intensity employment center, vibrant and dynamic mixed use areas, and residential living environments that provide a broad range of housing types for an array of housing needs." Morgantown City Code § 1349.01(A). The circuit court further considered the fact that the B-4 General Business District endeavors to "[e]ncourage pedestrian-oriented development within walking distance of public transit opportunities at densities and intensities that will help to support transit usage and businesses[.]" *Id.* at § 1349.01(C). *See Id.* at 1349.01(B) (stating, in part, that the B-4 General Business District is intended to "[p]romote a diverse mix of residential, business, commercial, [and] office . . . activities[.]"). Attendant to this purpose is the need for less parking than in other areas of the City of Morgantown. Based upon our review of the applicable ordinances and the record herein, we find that the circuit court did not abuse its discretion in affirming the decisions of the Planning Commission and BZA as to their interpretations of the parking requirement ordinances for the proposed development.

In its third assignment of error, petitioner argues that the circuit court erred in affirming the lower tribunals' findings that the proposed development, which will be twelve stories high and 120 feet or less in height, does not violate the Morgantown Comprehensive Plan's building height restriction of a maximum height of four stories or fifty feet. Specifically, petitioner argues that, under Morgantown City Code § 1301.05, the proposed development "shall conform to the principles, policies and provisions of the Comprehensive Plan[,]" and further, that the 2010 Morgantown Downtown Strategic Plan Update, which petitioner argues must be read *in pari materia* with all other provisions of the Morgantown City Code relating to land use,[3] states that

---

[3] Morgantown City Code § 1327.05(A) states that

> [t]he Zoning Ordinance shall be interpreted to include any and all other provisions of the Morgantown City Code, which are necessary for an understanding of this ordinance and the attainment of its purposes. The City Council of the City of

new buildings within the Character Area C4-Forest Avenue[4] "shall be" a maximum height of four stories or fifty feet, or a minimum of three stories or thirty feet in height to promote a mix of uses and a continuous urban edge. Petitioner argues that the use of the term "shall" indicates that it is mandatory that the maximum height of the proposed development be no more than four stories, or fifty feet.

Respondents counter that the specific zoning ordinance provision that governs building height in the B-4 General Business District requires that "[t]he maximum height of a principal structure . . . shall not exceed 120 feet, except as provided in Section 1363.02(A)."  Morgantown City Code § 1349.05(B). Respondents argue that the Morgantown Comprehensive Plan height requirements are simply guidelines for implementing zoning rules and do not supersede specific zoning ordinances,[5] which are specifically authorized to regulate building height. *See* W.Va.

---

Morgantown, West Virginia, intends that all Morgantown City Code provisions relating to land use, and all orders, rules, and regulations established pursuant to said provisions, be read as part of a uniform system of Morgantown land use regulation.

Petitioner argues that the "other provisions of the Morgantown City Code" include the Morgantown Comprehensive Plan and the Morgantown Downtown Strategic Plan Update.

[4] Without a great deal of explanation, petitioner and Campus Acquisitions state that the proposed development—which all parties agree is located within the B-4 General Business District—is also located in the Character Area C4-Forest Avenue as defined by the Downtown Morgantown Strategic Plan
.

[5] West Virginia Code § 8A-3-1(a), (b) and (c), regarding comprehensive plans, provides as follows:

(a) The general purpose of a comprehensive plan is to guide a governing body to accomplish a coordinated and compatible development of land and improvements within its territorial jurisdiction, in accordance with present and future needs and resources.
(b) A comprehensive plan is a process through which citizen participation and thorough analysis are used to develop a set of strategies that establish as clearly and practically as possible the best and most appropriate future development of the area under the jurisdiction of the planning commission. A comprehensive plan aids the planning commission in designing and recommending to the governing body ordinances that result in preserving and enhancing the unique quality of life and culture in that community and in adapting to future changes of use of an economic, physical or social nature. A comprehensive plan guides the planning commission in the performance of its duties to help achieve sound planning.
(c) A comprehensive plan must promote the health, safety, morals, order, convenience, prosperity and general welfare of the inhabitants, as well as efficiency and economy in the process of development.

6

Code § 8A-7-2(b)(8) (stating that "[a] zoning ordinance may include the following: . . . Regulating the height, area, bulk, use and architectural features of buildings . . . ."). Respondents further argue that petitioner erroneously relies on the 2010 Downtown Strategic Plan Update, conflating it with the Comprehensive Plan.

We agree with respondents and find that the circuit court did not abuse its discretion in affirming the decisions of the lower tribunals. Recognizing that a comprehensive plan is to be used by the Planning Commission as an aid and was "never intended to replace definite, specific guidelines; instead, it was to lay the groundwork for the future enactment of zoning laws," *Singer v. Davenport*, 164 W.Va. 665, 668, 264 S.E.2d 637, 640 (1980), the circuit court concluded that the zoning ordinances governing the B-4 General Business District superseded any comprehensive or strategic plan. Thus, as the proposed development conforms to the maximum height requirement of 120 feet as set forth in Morgantown City Code § 1349.05(B), the circuit court did not err.

In its fourth assignment of error, petitioner argues that the circuit court erred in denying petitioner's petition for writ of certiorari because the Planning Commission and BZA relied on an out-of-date traffic impact study when approving the Site Plan. The study was submitted along with Campus Acquisitions' original site-plan application for the proposed development, which was filed as a "Type III Development of Significant Impact." Though the original application was approved by the Planning Commission, the BZA reversed because, based upon the size and scope of the proposed development, it qualified as a "Major Development of Significant Impact" under the City's planning and zoning code. The present site-plan application was submitted under this classification. In this appeal, petitioner argues that after the original application was filed, Campus Acquisitions increased the proposed amount of commercial space by almost 4,000 square feet. As a result, the Planning Commission and BZA should have required an updated traffic impact study because, without it, they were unable to perform a "complete and thorough review" of the submitted Site Plan as required by Morgantown City Code § 1385.01. *See Id.* (stating, in part, that "[i]t shall be the duty of the Planning Director, or his/her designee, in conjunction with other appropriate departments and agencies, to perform [a] complete and thorough review of all plans submitted to the Planning Department.").

We find no error. As a threshold matter, a traffic impact study was not mandatory as part of the site-plan application. In connection with a "Type III Major Development of Significant Impact" site-plan review, the Planning Commission "*may* require an analysis of the proposed development's impact on . . . traffic flows and/or dedicated City roadways[.]" Morgantown City Code § 1385.08(D). (Emphasis added). If submitted, the study would not be grounds for denial of the project unless the projected traffic impact "would result in a two (2) full letter grade decline in the existing Level of Service (e.g., going from a Level of Service B to a Level of Service D) of any dedicated City street directly serving the use . . . ." Morgantown City Code §1385.08(D)(1), in part. Notwithstanding petitioner's assertion to the contrary, the record shows that the proposed development will have 7,310 square feet of non-residential space with approximately 3,435 square feet of commercial/retail space, the latter of which is reflected in the traffic impact study accompanying the application submitted under the "Major Developments of Significant Impact" classification. We find that this does not represent an increase in commercial space as petitioner claims and note the circuit court's finding that the City of Morgantown and

7

the West Virginia Department of Transportation "determined that [the] study adequately represented the likely traffic impacts of the Proposed Development and did not demonstrate degradation in level of service on the affected streets."[6] Petitioner did not present evidence to the contrary. Given these facts, petitioner's argument that the Planning Commission could not have performed a "complete and thorough review" of the Site Plan as required by Morgantown City Code § 1385.01 is without merit. Accordingly, the circuit court did not err in affirming the decisions of the Planning Commission and BZA.

In its final assignment of error, petitioner argues that the circuit court erred in denying petitioner's petition for writ of certiorari because there was no room for construction staging and storage at the location of the proposed development. Petitioner argues that the lack of such space will create serious health and safety issues for the Morgantown community given that the proposed development "will cover virtually the entirety of the lot in question with only set-backs not occupied by the structure[,]" leaving no space for storage and spacing. Furthermore, petitioner argues that extended closures of either or both Willey and Spruce Streets will be required, which can only occur with authorization of the West Virginia Department of Transportation, Division of Highways. *See* W.Va. Code §§ 17-4-1 and -8. According to petitioner, the resulting significant decline in the level of service for a city street is sufficient grounds for denial of the project. *See* Morgantown City Code § 1385.08.

Respondents counter that petitioner misapprehends the role of site plan review, as the same does not include review of construction documents or the temporary closure of streets; rather, it is limited to consideration of the general, performance and design standards in the City of Morgantown's planning and zoning ordinances. *See Id.* at § 1385.12(B)(1) and (2). Respondents explain that Campus Acquisitions must separately apply for a building permit once the Site Plan is approved and must also request the temporary closure of Willey and Spruce Streets—which are State roads—from the West Virginia Department of Transportation, Division of Highways. Respondents thus argue that the construction staging and storage issues raised by petitioner are not grounds for the rejection of the project at issue. We agree.

Given that any temporary closure of a state road would be controlled by the State, not the City of Morgantown, and that the Planning Commission's review of the Site Plan does not include review of construction documents, the Planning Commission may not reject a site plan based upon an anticipated need to close streets for construction. Thus, it was not error for the circuit court to affirm the decisions of the Planning Commission and BZA on this issue.

For the foregoing reasons, we affirm.

Affirmed.

---

[6] Respondents represent and petitioner does not dispute that Willey and Spruce Streets are State roads within the jurisdiction of the West Virginia Department of Transportation, Division of Highways, and thus, not "dedicated City street[s]" under Morgantown City Code §1385.08(A)(2). Nonetheless, both the City of Morgantown and the West Virginia Department of Transportation determined that, based upon the traffic impact study, no degradation in level of service would occur.

8

**ISSUED:** October 7, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

9