CONCERNED CITIZENS OF SOUTHERN OHIO, INC.,
ET AL. *v.* PINE CREEK CONSERVANCY
DISTRICT ET AL.

No. 76–667.   Decided February 22, 1977

PER CURIAM.

Chapter 6101 of the Ohio Revised Code establishes procedures for the organization and governance of conservancy districts, political subdivisions of the State invested with the power to carry out flood prevention and control measures. The statute provides for the creation of a conservancy court each time that a petition is duly filed to propose the creation of a new district.  It is the conservancy court's responsibility first to evaluate the desirability of establishing the proposed district and then, if it decides to create the district, to assume the ultimate responsibility for administering the district.  A conservancy district may include territory from one or more counties, and the conservancy court is composed of one judge from the court of common pleas in each county having territory within the conservancy district.

In 1966 the Pine Creek Conservancy District was established in accordance with the procedures set forth in chapter

6101. Appellants, who collectively are residents, property owners, and taxpayers in the Pine·Creek District, brought the present action, seeking declaratory and injunctive relief and alleging, *inter alia,* that chapter 6101 is unconstitutional.

Appellants leveled three constitutional challenges against the statute in the District Court, and those claims have been renewed in the ·instant appeal. First, they argue that it violates due process for the conservancy courts to make the decision as to whether the conservancy districts that they will administer should be formed. Since the judges of the conservancy courts are entitled to special compensation for their work on those courts, appellants contend that they have a financial incentive to declare the proposed districts organized and that, therefore, persons objecting to the formation of a district are deprived of a hearing before an impartial judicial officer. See *Ward* v. *Monroeville,* 409 U. S. 57 (1972); *Tumey* v. *Ohio,* 273 U. S. 510 (1927). Second, appellants contend that the composition of the conservancy courts violates the one-man, one-vote principle of *Baker* v. *Carr,* 369 U. S. 186 (1962), and *Reynolds* v. *Sims,* 377 U. S. 533 (1964), because the judges on those courts are selected without regard to the size of the population that they represent. Third, appellants argue that chapter 6101 permits the disenfranchisement of freeholders affected by the decision to create a conservancy district because the statute creates a presumption that a local political body, such as a township, represents the views of all persons within its jurisdiction whenever it supports a petition proposing the creation of a conservancy district.

A three-judge court rejected all of these claims on the single ground that they were foreclosed by *Orr* v. *Allen,* 248 U. S. 35 (1918), aff'g 245 F. 486 (WD Ohio 1917), a case in which we rejected a due process and equal protection attack on the statute challenged here. No. C–1–75–5 (WD Ohio, July 6, 1976).

None of the issues presented in this case was raised or

passed upon in *Orr*. The appellant in *Orr* presented four issues to this Court, none of which had anything to do with the issues presented here. The appellant argued that the challenged statute denied him judicial review, that it authorized an impairment of existing contracts, that it improperly conferred legislative powers on the judiciary, and that it authorized a taking without compensation. Our three-page memorandum opinion in *Orr* did not purport to go beyond the issues raised by the appellant in that case. By no stretch of the imagination can our decision in *Orr* be thought to have silently dealt with issues which arose and were decided in later cases such as *Ward, Tumey,* and *Reynolds* v. *Sims.*

Because the court below gave no independent consideration to the issues raised by appellants and relied exclusively on *Orr,* although that case considered none of the issues now presented, it is apparent that the merits of appellants' claims have never been fully considered by any federal court. Without offering any view as to the relative merit of appellants' contentions, it is fair to say that they are not insubstantial. We therefore reverse the decision below and remand for a full consideration of the issues presented by appellants.

*So ordered.*

THE CHIEF JUSTICE would note probable jurisdiction and give plenary consideration to this appeal.

MR. JUSTICE REHNQUIST, with whom MR. JUSTICE POWELL and MR. JUSTICE STEVENS join, dissenting.

The action the Court takes today in this appeal is unexplained and very likely inexplicable. The three-judge District Court heard the case and rendered a final decision on the merits. It concluded that our affirmance in *Orr* v. *Allen,* 248 U. S. 35 (1918), and principles of *stare decisis,* compelled rejection of the constitutional challenges.

The opinion of the District Court sets forth every one of the challenges detailed by the Court today, and it is clear from its opinion that each of these claims was considered and rejected by it. On appeal here from such a decision, in the absence of relevant intervening circumstances, see, e. g., Guste v. Jackson, ante, p. 399; Town of Lockport v. Citizens for Community Action, 423 U. S. 808 (1975); Weinberger v. Jobst, 419 U. S. 811 (1974), or procedural irregularities in the District Court's consideration of the case, e. g., Westby v. Doe, 420 U. S. 968 (1975), this Court ordinarily either affirms, modifies, or reverses the judgment of the District Court. But in this case it has chosen none of these courses. Disagreeing with the District Court as to the scope of Orr v. Allen, it remands for "full consideration" of claims based on cases decided since Orr, in the teeth of the obvious fact that the District Court did consider these claims and rejected them.[1] I agree with the Court that Orr does not afford an adequate basis for our affirming the District Court, although I am not nearly as certain that it was not an adequate basis for the District Court's decision. But even though the Members of this Court are agreed that Orr is not authority for rejecting appellants' claims based on Baker v. Carr, 369 U. S. 186 (1962), and Tumey v. Ohio, 273 U. S. 510 (1927), that amounts to nothing more than a disagreement with the reasoning of the District Court on the merits of the case. We should treat those claims, here now, rather than "remanding" to the District Court as if we were editing a law student's first draft of a law review note.[2]

---

[1] Appellants' reply brief before the District Court amply argues that Orr was not controlling because that case concerned other constitutional challenges. Thus, the District Court was aware of the arguments this Court now relies on for a remand.

[2] The judgment order entered in the case states: "This matter came on for hearing by agreement of the parties upon the briefs of the parties on the issues of constitutionality of various sections of Chapter

Believing as I do that we should reach and decide these claims, I shall state briefly my reasons for concluding that they are not sufficiently substantial to warrant setting the case for argument, and that the judgment of the District Court should be affirmed.

Appellants raise three constitutional objections. Two of them are connected in the sense that they do not relate to the *operation* of the Pine Creek Conservancy District, but, rather, are objections solely to the *formation* of that district.[3] The first of these contentions is that persons objecting to the formation of a district are deprived of a hearing before an impartial judicial officer.[4] The second is that chapter

---

6101 of the Ohio Revised Code dealing with Conservancy Districts." The District Court thus did canvass the contentions going to the merits, and decided the issue, albeit on a ground not favored by the majority of this Court. But there can be no contention that appellants were precluded from entering relevant evidence into the record, or precluded from presenting a pertinent legal argument. Both parties, in essence, presented all they wished to on the constitutional issues to the District Court. Nor is there any hint that the factual record is in such a shape as to preclude determination of the issues by this Court. I am simply at a loss to explain this Court's curious remand.

[3] None of the named plaintiffs allege in their complaint that they were residents at the time of the formation of the Conservancy District, although there are recitations in the body of the complaint that might indicate that at least some were residents at that time. Because of the failure to allege residency in 1966, their standing to raise such contentions is questionable.

[4] Once the district is formed, the conservancy court has no incentive to decide a particular fact situation one way or another, as their pay remains the same in either case. The Jurisdictional Statement of appellants, however, suggests another, related attack:

"To receive payment of this *per diem,* of course, the treasury of the district must be full. The income of the district comes from assessments based on appraisals which the court must approve or disapprove . . . ."

Yet this challenge is to the remote impact on funding from full town coffers, raised and rejected in *Dugan* v. *Ohio,* 277 U. S. 61 (1928). The payments are paid out of assessments, which are the responsibility, in

6101 of the Ohio Revised Code permits disenfranchise-
ment of freeholders to object to the formation of the district
if the local political body supported the petition.

The district was formed in 1966, and these two objections
were fully available to be raised at that time. This lawsuit
was not filed until 1975. Absent some persuasive demonstra-
tion of a reason for such delay, I would view such a leisurely
attack on the formation of a governmental body as barred by
laches. "There must be conscience, good faith, and reason-
able diligence, to call into action the powers of the court."
*McKnight* v. *Taylor,* 1 How. 161, 168 (1843). The appellants
seek not merely a reapportionment of the voting population
of the district, but a judicial declaration that its formation
was a nullity. Surely an attack on the formation of an organ
of government is one of the situations where "both the nature
of the claim and the situation of the parties was such as to call
for diligence." *Benedict* v. *City of New York,* 250 U. S. 321,
328 (1919). There has been no such diligence here, and
neither the pleadings nor the proof intimates any excuse for
the delay.

These two challenges, I believe, fare no better on the
merits. The first, again, challenges the constitutionality, un-
der *Tumey* v. *Ohio, supra,* of having court of common pleas
judges decide whether the district should be formed, since,
under § 141.07 of the Ohio Revised Code Ann. (Page 1975
Supp.), they will receive extra compensation if such district
is formed. Neither *Tumey* nor *Ward* v. *Monroeville,* 409
U. S. 57 (1972), has any direct bearing on the constitutional-
ity of the Ohio procedure for forming a conservancy district.
As *Tumey* and *Ward* made clear, those cases involved quin-
tessentially *judicial functions,* see, *e. g., Tumey, supra,* at

the first instance, of the board of directors of the district, not the con-
servancy court, see Ohio Rev. Code Ann. §§ 6101.45, 6101.48 (Page 1975
Supp.). This issue surely raises no further challenge not worthy of a
summary affirmance.

522.[5] Here, however, the determinations, although made by judges, are essentially legislative in nature. As Mr. Justice Holmes recognized, the determination of legislative facts does not necessarily implicate the same considerations as does the determination of adjudicative facts. *Londoner* v. *Denver,* 210 U. S. 373 (1908); *Bi-Metallic Investment Co.* v. *State Bd. of Equalization,* 239 U. S. 441 (1915). Since I know of no constitutional objection to the formation of such districts through legislative or executive action—without giving opposing citizens a chance to air their objections, see *Houck* v. *Little River Dist.,* 239 U. S. 254, 262 (1915)—I see no constitutional objection to the procedures followed here. Those procedures simply insured an *additional* check on the process of formation, already petitioned for by the town governments, and the fact that they may not have been before an "impartial" judicial officer offends no constitutional right of appellants.

The second "formation" challenge, as presented by appellants, raises the following issue:

> "Section 6101.05, Ohio Revised Code, submits the first decision in the creation of a conservancy district to the freeholders, who must petition for its creation. This is the only step in the entire procedure which calls for any participation in support or opposition, by the residents or landowners, to the creation of the district or the execution of its projects. . . . Section 6101.05, Ohio Revised Code, provides that the petition may be signed by the governing body of any public corporation in the proposed district. When such a public corporation signs

---

[5] In *Gibson* v. *Berryhill,* 411 U. S. 564, 579 (1973), where the proceeding was adjudicative in nature, but not criminal, we discussed whether the "pecuniary interest of the members . . . had *sufficient substance* to disqualify them . . . ." (Emphasis supplied.) Here, of course, the proceeding is more legislative than adjudicative, and is neither criminal nor stigmatizing.

the petition, all freeholders within it are conclusively presumed to favor creation of the district. In effect, all persons living in the three townships and one village which signed the petition who opposed the district were deprived of the right to oppose the district." Jurisdictional Statement 13–14.

This constitutional challenge is wholly insubstantial. I know of nothing, and appellants suggest nothing, which would even arguably make the issue one that freeholders were constitutionally entitled to vote on. Thus, had the statute simply allowed the governing bodies of the respective townships to form such a district, there is surely no constitutional objection simply because the populace did not vote, *Houck* v. *Little River District, supra,* at 262, 264. To the extent the claim here protests the "discrimination" against the freeholders in a town whose governing body signs the petition, in that they "were deprived of the right to oppose the district," it is simply wrong on the facts. There is no conclusive presumption, when the governing body signs a petition, that "all freeholders . . . favor creation of the district." Rather, opposing freeholders in such towns remain as free as opposing freeholders in towns where petitions are circulated, to appear before the conservancy court and "object to the organization and incorporation of said district . . . ." Ohio Rev. Code Ann. § 6101.08 (Page 1975 Supp.). They are entitled to no more under the Constitution.

Appellants raise one other objection to the constitutionality of the statutory scheme, although not limited exclusively to the formation of the district. This is the claim that the selection of judges for the conservancy court violates the one-man, one-vote principle of *Baker* v. *Carr, supra,* and its progeny. But the one-man, one-vote decisions do not apply to the selection of judges, *Wells* v. *Edwards,* 347 F. Supp. 453 (MD La. 1972), aff'd, 409 U. S. 1095 (1973). As the majority of the functions of the conservancy court are admittedly

judicial, see Ohio Rev. Code Ann. §§ 6101.07, 6101.28, 6101.33 (Page 1975 Supp.), the majority of such a one-man, one-vote challenge has already been squarely rejected by *Wells.* With respect to the remaining functions, essentially legislative or executive in nature, the scope of powers granted to a conservancy district itself are so narrowly confined as not to call into play the strict application of one-man, one-vote doctrines. Conservancy districts, established solely for flood prevention and control, do not exercise "general governmental powers," as that phrase was defined in *Avery* v. *Midland County,* 390 U. S. 474 (1968). Rather, flood control is a "special limited purpose," much like that found in *Salyer Land Co.* v. *Tulare Water Dist.,* 410 U. S. 719 (1973), and, likewise, "the popular election requirements enunciated by *Reynolds* [v. *Sims,* 377 U. S. 533 (1964)] and succeeding cases are inapplicable . . . ." *Id.,* at 730. In such a situation, where both counties have an interest, and there is no evidence of discrimination against any group, see *Williams* v. *Rhodes,* 393 U. S. 23 (1968), such a selection process is permissible, *Salyer Land Co.* v. *Tulare Water Dist., supra;* cf. *Hunter* v. *City of Pittsburgh,* 207 U. S. 161 (1907).[6] As I am unable to conclude that the decision to have one judge for each affected county is "wholly irrelevant to achievement of the regulation's objectives," *Kotch* v. *River Port Pilot Comm'rs,* 330 U. S. 552, 556 (1947), I would also reject this challenge and affirm the judgment of the District Court.

---

[6] We are told that the Pine Creek Conservancy District lies partially in Lawrence County and partially in Scioto County. We are told that the 1970 population was 56,868 and 76,951, respectively. We are also told that "[i]n neither instance is the entire county included in the district." We are not told, however, how much of either county is in the district, nor how many freeholders reside in either county. It would seem to follow that appellants fail in their burden of showing that "the voting power of the judges" has not been approximated "to the number of people they represent, or to the land or people within the district which they represent."