693 S.E.2d 321

Jane RISSLER, Patricia Rissler, Susan Rissler–Sheely, Mary MacElwee, Richard Latterell, and Sherry Craig, Petitioners Below, Appellants,

v.

The JEFFERSON COUNTY BOARD OF ZONING APPEALS, Respondent Below, Appellee,

and

Thornhill, LLC, Intervenor Below, Appellee.

No. 35274.

Supreme Court of Appeals of West Virginia.

Submitted March 3, 2010.

Decided April 1, 2010.

David M. Hammer, Hammer, Ferretti & Schiavoni, Martinsburg, WV, Attorney for the Appellants.

Stephanie F. Grove, Assistant Prosecuting Attorney, Charles Town, WV, Attorney for the Appellee, the Jefferson County Board of Zoning Appeals.

Richard G. Gay, Nathan P. Cochran, Law Office of Richard Gay, LC, Berkeley Springs, WV, Attorneys for the Appellee, Thornhill, LLC.

PER CURIAM:

The appellants herein and petitioners below, Jane Rissler, Patricia Rissler, Susan Rissler–Sheely, Mary MacElwee, Richard Latterell, and Sherry Craig (hereinafter collectively referred to as "Ms. Rissler"), appeal from an order entered March 5, 2009, by the Circuit Court of Jefferson County. By that order, the circuit court denied Ms. Rissler's petition for writ of certiorari, through which Ms. Rissler sought to challenge the August 22, 2005, decision of the Jefferson County Board of Zoning Appeals (hereinafter referred to as "the Board"). On appeal to this Court, Ms. Rissler assigns five errors: (1) Board member David Weigand should have recused himself due to a conflict of interest; (2) Board member Doug Rockwell should have recused himself due to a conflict of interest; (3) Board attorney J. Michael Cassell should have been disqualified due to a conflict of interest; (4) Ms. Rissler was denied due process because the hearing tribunal was not impartial; and (5) the circuit court misinterpreted the language of Jefferson County Zoning and Land Development Ordinance (hereinafter referred to as the "Ordinance") § 6.4(g).[1] Upon a review of the

---

1. Jefferson County Zoning and Land Development Ordinance § 6.4(g) provides

(g) Public Sewer Availability (11 points)
This criterion assesses the availability of existing public sewer service with available capacity that is approved by the County Health Department and/or Public Service District to the site at the time of the development proposal application. If there is no public sewer service available, a central sewer system or private sewer disposal system can be used. The value for a proposed central sewer system is assigned to a development application recognizing that the system with adequate capacity to serve the development will be approved by the Public Service District, County Health Department, and the Department of Natural Resources before preliminary plat or site plan approval occurs.

parties' arguments, the record presented for appellate consideration, and the pertinent authorities, we reverse the decision of the Jefferson County Circuit Court and remand this matter for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The salient facts underlying the case *sub judice* are not disputed by the parties. Thornhill, LLC, is a real estate developer. In 2001, Thornhill applied for a conditional use permit (hereinafter referred to as "CUP") to enable it to build a new subdivision in a rural portion of Jefferson County. In evaluating this application, Thornhill initially was given a passing LESA score,[2] which would have permitted it to proceed with its development plans. However, Ms. Rissler, as well as the other named petitioners, all of whom own property adjacent to the subdivision Thornhill proposes to build, objected to the approval of Thornhill's permit. Among her many objections, Ms. Rissler opposed the score assigned to the sewage system proposed by Thornhill in its CUP application claiming that such score was erroneous because the zoning administrator had given Thornhill credit for a sewage system different than the one it had proposed to construct.[3]

On October 6, 2004, the Board of Zoning Appeals resolved all of the issues raised by Ms. Rissler except for the sewer matter, which issue it remanded to the zoning administrator for further consideration. By decision rendered August 22, 2005, the Board adopted the findings of the zoning administrator, who had concluded that Thornhill was proposing a central sewer system, *i.e.*, three LESA points, rather than a private sewer system, *i.e.*, eleven LESA points.

From this decision, Ms. Rissler appealed to the Circuit Court of Jefferson County. In her writ of certiorari, Ms. Rissler argued that Thornhill should not have been given credit for a central sewer system because such system was not in place at the time it

---

If neither a public or central sewer system can be utilized, assign the point value for a private sewer disposal system.

| AVAILABILITY | POINTS |
| --- | --- |
| Existing Pubic Sewer Service is available or public sewer will be built to the site | 0 |
| Central Sewer Service is Proposed | 3 |
| Private Sewer Disposal System must be Utilized | 11 |

2. "LESA" stands for "land evaluation and site assessment." *Jefferson Utils., Inc. v. Jefferson County Bd. of Zoning Appeals*, 218 W.Va. 436, 438, 624 S.E.2d 873, 875 (2005). "The LESA is a numerical rating system that is assessed based on criteria detailed in sections 6.3 (soils assessment) and 6.4 (amenities assessment) of the [Jefferson County Zoning and Land Development] Ordinance, which is applied in the first instance by the zoning administrator." *Id.*, 218 W.Va. at 438 n. 1, 624 S.E.2d at 875 n. 1 (citation omitted). "Being awarded a low score on … the … LESA factors … is crucial to obtaining a favorable LESA score, which is necessary to obtain approval for land development under … the Ordinance." *Id.*, 218 W.Va. at 439, 624 S.E.2d at 876 (footnote omitted).

With respect to the preference for a low LESA score, the Jefferson County Zoning and Land Development Ordinance explains, in § 6.2, that [a]pplication for a conditional use permit shall be made before construction of any uses not listed as permitted uses within the appropriate zoning district. Upon receipt of an ap-

plication, the site will be evaluated by the Planning and Zoning Staff using the Development Review System. The two major components of the System, the *Soils Assessment* and the *Amenities Assessment*, consist of criterion which each possess a numerical value that is weighted relative to its importance as an indicator of a parcel's agricultural significance or its development potential. The total numerical value of the combined criteria is 100 points: the Soil Assessment contributes 25 points and the Amenities Assessment contributes 75 points. The highest total numerical value of the combined criteria indicates that a parcel is more suitable for agriculture, whereas, the lowest numerical value indicates that development is more appropriate for the site.

3. Specifically, Thornhill's application proposed building a central sewer system for the new subdivision; this type of sewer system would have received three LESA points. By contrast, the zoning administrator approved Thornhill's CUP application based upon the existence of public sewer service or the installation of public sewer lines that would service the new subdivision; the utilization of public sewage service yields zero LESA points. However, Ms. Rissler contends that the actual type of sewer required by Thornhill's new subdivision is a private sewage system, which would be assigned a value of eleven LESA points.

Under the LESA system, the lower the total number of points assigned to a component of a proposed project, the more likely the project is to be approved. *See supra* note 2.

submitted its CUP application. Moreover, Ms. Rissler contended that she had been denied due process insofar as she had not been afforded a hearing before an impartial hearing tribunal. In this regard, Ms. Rissler averred that Board members Weigand and Rockwell had conflicts of interest that required their recusal from the Board, and that Board attorney Cassell had a conflict of interest that required his disqualification from the Board's proceedings. The circuit court rejected all of these assigned errors, and denied Ms. Rissler's petition for writ of certiorari. Ms. Rissler then appealed this adverse decision to this Court.

## II.

## STANDARD OF REVIEW

Through her appeal to this Court, Ms. Rissler complains of errors that allegedly occurred during the underlying proceedings before the Jefferson County Board of Zoning Appeals. We previously have held that, " '[w]hile on appeal there is a presumption that a board of zoning appeals acted correctly, a reviewing court should reverse the administrative decision where the board has applied an erroneous principle of law, was plainly wrong in its factual findings, or has acted beyond its jurisdiction.' Syl. Pt. 5, *Wolfe v. Forbes*, 159 W.Va. 34, 217 S.E.2d 899 (1975)." Syl. pt. 1, *Corliss v. Jefferson County Bd. of Zoning Appeals*, 214 W.Va. 535, 591 S.E.2d 93 (2003). Mindful of this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, Ms. Rissler assigns five errors: (1) Board member David Weigand should have recused himself due to a conflict of interest; (2) Board member Doug Rockwell should have recused himself due to a conflict of interest; (3) Board attorney J. Michael Cassell should have been disqualified due to a conflict of interest; (4) Ms. Rissler was denied due process because the hearing tribunal was not impartial; and (5) the circuit court misinterpreted the language of Jefferson County Zoning and Land Development Ordinance § 6.4(g).

### A. Due Process

■ Ms. Rissler contends that, because certain members of the Jefferson County Board of Zoning Appeals and its attorney were not disqualified from the underlying proceedings concerning Thornhill's CUP application, she and the other petitioners were denied due process because they did not receive a hearing before an impartial tribunal. Insofar as this assignment of error subsumes the assignments of error relating to the disqualification of various participants in the underlying zoning appeals process, we will jointly consider these issues.

In the context of these proceedings, Ms. Rissler argues that the due process protections afforded by the United States and West Virginia Constitutions[4] require that she be afforded a hearing before an impartial tribunal upon her appeal to the Board of Zoning Appeals. *See* Syl. pt. 1, *Sisler v. Hawkins,* 158 W.Va. 1034, 217 S.E.2d 60 (1975) (" 'The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard.' Point 2, Syllabus, *Simpson v. Stanton,* 119 W.Va. 235[, 193 S.E. 64 (1937) ]."). However, before we may consider whether Ms. Rissler and the remaining petitioners were entitled to due process and the nature of the process to which they were due, we must first resolve an issue raised by Thornhill and the Board, which essentially suggests that the petitioners were not entitled to due process in these

---

4. Due process is guaranteed by the Fourteenth Amendment to the United States Constitution: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. Article III, section 10 of the West Virginia Constitution also contains due process protections: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." Such protections extend to judicial, as well as administrative, proceedings: "Due process of law, within the meaning of the State and Federal constitutional provisions, extends to actions of administrative officers and tribunals, as well as to the judicial branches of the governments." Syl. pt. 2, *State ex rel. Ellis v. Kelly,* 145 W.Va. 70, 112 S.E.2d 641 (1960).

proceedings because they did not have a protected property interest therein. *See* Syl. pt. 3, *State ex rel. Deputy Sheriff's Ass'n v. County Comm'n of Lewis County,* 180 W.Va. 420, 376 S.E.2d 626 (1988) ("No property interest exists where an individual does not have a legitimate claim of entitlement to the object sought."). Contrary to these assertions, however, the governing ordinances and statutes expressly recognize the interests sought to be protected by Ms. Rissler and the other petitioners in these proceedings and afford them an opportunity to appeal from rulings that are adverse to such interests.

■ Pursuant to Jefferson County Zoning and Land Development Ordinance § 8.1(a), "[a]n appeal to the Board [of Zoning Appeals] may be taken by *any person . . . allegedly aggrieved* by any administrative decision based or claimed to be based, in whole or in part, upon the provisions of this Ordinance. . . ." (Emphasis added). Likewise, the statutory provision governing appeals from a decision of a county board of zoning appeals expressly permits "any aggrieved person" to file, in circuit court, a petition for a writ of certiorari to challenge the legality of the board's decision. W. Va.Code § 8A–9–1(b) (2004) (Repl. Vol. 2007). Interpreting an earlier version of this statute, which also referred to an "aggrieved person," this Court held that

> [a] person qualifies as "aggrieved" within the meaning of West Virginia Code § 8–24–59 (1969) (Repl. Vol. 1998) [5] and thereby has standing to challenge a decision or order of the Board of Zoning Appeals as illegal where the individual demonstrates that, as a result of the challenged ruling, he/she will uniquely suffer injury separate and apart from that which the general citizenry might experience as a result of the same ruling.

Syl. pt. 6, *Corliss v. Jefferson County Bd. of Zoning Appeals,* 214 W.Va. 535, 591 S.E.2d 93 (footnote added). It goes without saying,

then, that if an "aggrieved person" has a property interest such as would afford him/her standing to appeal an adverse decision to a board of zoning appeals, or to subsequently challenge a board of zoning appeals decision, he/she surely is entitled to due process to ensure that such interest is protected as required by the state and federal constitutions. *See* Syl. pt. 3, *Waite v. Civil Serv. Comm'n,* 161 W.Va. 154, 241 S.E.2d 164 (1977) ("A 'property interest' includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or understandings."). *See also* Syl. pt. 2, *Jordan v. Roberts,* 161 W.Va. 750, 246 S.E.2d 259 (1978) ("Under procedural due process concepts a hearing must be appropriate to the nature of the case and from this flows the principle that the State cannot preclude the right to litigate an issue central to a statutory violation or deprivation of a property interest.").

Reviewing the facts of this case, it is apparent that Ms. Rissler and the remaining petitioners have a cognizable property interest they seek to protect through these proceedings. Unlike the population of Jefferson County as a whole, the specific petitioners who are parties to the case *sub judice,* "as a result of the challenged ruling, . . . will uniquely suffer injury separate and apart from that which the general citizenry might experience as a result of the same ruling." Syl. pt. 6, in part, *Corliss v. Jefferson County Bd. of Zoning Appeals,* 214 W.Va. 535, 591 S.E.2d 93. Ms. Rissler and the other petitioners in this case own real property adjacent to the subdivision for which Thornhill has sought development approval through the instant CUP application. The property owned by the petitioners is located in a rurally-zoned area, and it is this zoning designation that requires Thornhill to obtain a CUP before it may build its subdivision in that

---

**5.** The Legislature repealed W. Va.Code § 8–24–59 in 2004 and recodified it, with substantially similar language, as W. Va.Code § 8A–9–1. *Compare* W. Va.Code § 8–24–59 (1969) (Repl. Vol. 2003) (permitting "[a]ny person or persons jointly or severally aggrieved by any decision or order of the board of zoning appeals" to file petition for writ of certiorari in circuit court) *with* W. Va.Code § 8A–9–1(b) (2004) (Repl. Vol. 2007) (affording "any aggrieved person" opportunity to petition for writ of certiorari from board of zoning appeals decision to circuit court).

particular location. Ordinance § 5.7 defines an area zoned as a "rural district" as follows:

> The purpose of this district is to provide a location for low density single family residential development in conjunction with providing continued farming activities.... A primary function of the low density residential development permitted within this section is to preserve the rural character of the County and the agricultural community....

Here, Thornhill proposes to build approximately 600 houses on roughly 500 acres of land. It goes without saying that such an increase in population density significantly affects the property interests of the petitioners insofar as they now own property in a low-density, rural district, but, should Thornhill's CUP application be approved, they will essentially own property in a high-density district due to the influx of 600 additional families in Thornhill's new subdivision. Because the property they own is adjacent to this rather substantial proposed new subdivision, the petitioners certainly "will uniquely suffer injury separate and apart from that which the general citizenry might experience as a result of the same ruling." Syl. pt. 6, in part, *Corliss*, 214 W.Va. 535, 591 S.E.2d 93. Therefore, we find that the petitioners have standing to assert their right to due process in this case.

With respect to her due process assignment of error, Ms. Rissler contends that, on appeal to the Board of Zoning Appeals, she was entitled to a hearing before an impartial tribunal but that she was not afforded such a hearing because Board members Weigand and Rockwell and Board attorney Cassell all harbored disqualifying conflicts of interest. The Board and Thornhill dispute these claims of a denial of due process, contending, instead, that none of the aforementioned participants in the Board's proceedings harbored a disqualifying interest so as to render the proceedings improper.

■ In the context of the issues raised in the case *sub judice*, due process requires a hearing before an impartial and neutral tribunal, over which a disinterested adjudicator presides. *See In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). *See also Concerned Citizens of S. Ohio, Inc. v. Pine Creek Conservancy Dist.,* 429 U.S. 651, 652, 97 S.Ct. 828, 829, 51 L.Ed.2d 116 (1977) (per curiam) (observing that due process requires "hearing before ... impartial judicial officer"). The United States Supreme Court has explained that

> due process requires a "neutral and detached judge in the first instance," *Ward v. Village of Monroeville,* 409 U.S. 57, 61–62, 93 S.Ct. 80, 84, 34 L.Ed.2d 267 (1972), and the command is no different when a legislature delegates adjudicative functions to a private party, see *Schweiker v. McClure,* 456 U.S. 188, 195, 102 S.Ct. 1665, 1669, 72 L.Ed.2d 1 (1982)[, *superseded by statute on other grounds as stated in Diagnostic Cardioline Monitoring of New York, Inc. v. Shalala,* No. 99–CV–5686 (JS), 2000 WL 1132273 (E.D.N.Y. June 26, 2000) ]. "That officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy to be decided is, of course, the general rule." *Tumey v. Ohio,* 273 U.S. 510, 522, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927). Before one may be deprived of a protected interest, whether in a criminal or civil setting, see *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, and n. 2, 100 S.Ct. 1610, 1613, and n. 2, 64 L.Ed.2d 182 (1980), one is entitled as a matter of due process of law to an adjudicator who is not in a situation " 'which would offer a possible temptation to the average man as a judge ... which might lead him not to hold the balance nice, clear and true....' " *Ward, supra,* 409 U.S. at 60, 93 S.Ct. at 81[, 34 L.Ed.2d 267] (quoting *Tumey, supra,* 273 U.S., at 532, 47 S.Ct., at 444[, 71 L.Ed. 749] ). Even appeal and a trial *de novo* will not cure a failure to provide a neutral and detached adjudicator. 409 U.S., at 61, 93 S.Ct. at 83.

"[J]ustice," indeed, "must satisfy the appearance of justice, and this stringent rule may sometimes bar trial [even] by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." *Marshall v. Jerrico, Inc., supra,* 446 U.S.,

at 243, 100 S.Ct., at 1613[, 64 L.Ed.2d 182] (citations and internal quotation marks omitted). This, too, is no less true where a private party is given statutory authority to adjudicate a dispute, and we will assume that the possibility of bias ... would suffice to bar [such parties] from serving as adjudicators[.]

*Concrete Pipe & Prods. of California, Inc. v. Construction Laborers Pension Trust for S. California,* 508 U.S. 602, 617–18, 113 S.Ct. 2264, 2277, 124 L.Ed.2d 539 (1993). Thus, this requirement of impartiality applies not only to judicial officers but also to private persons who serve as adjudicators. *See Tumey v. Ohio,* 273 U.S. at 522, 47 S.Ct. at 441, 71 L.Ed. 749 ("That officers acting in a judicial or quasi judicial capacity are disqualified by their interest in the controversy to be decided is of course the general rule."). *See also Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973) ("Most of the law concerning disqualification because of interest applies with equal force to ... administrative adjudicators." (internal quotations and citation omitted)).

 As noted by the foregoing language of *Concrete Pipe, supra,* the appearance of justice may require the disqualification of an adjudicator, even when the adjudicator does not have an actual interest in a matter over which he/she presides. Thus, although there exists a "presumption of honesty and integrity in those serving as adjudicators," *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), where an adjudicator possesses the possibility of a disqualifying bias such that the proceedings, themselves, would appear to be constitutionally infirm, the adjudicator will be deemed to be disqualified to ensure that the aggrieved party receives the process to which he/she is due, *i.e.,* a hearing before an impartial tribunal. To this end, the Supreme Court has explained that

[a] fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end ... no man is permitted to try cases where

he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered.... Such a ... rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13[, 99 L.Ed. 11 (1954) ].

*In re Murchison,* 349 U.S. at 136, 75 S.Ct. at 625, 99 L.Ed. 942. When determining whether disqualification is required in a particular case, "[t]he inquiry is an objective one. The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.' " *Caperton v. A.T. Massey Coal Co., Inc.,* — U.S. ——, ——, 129 S.Ct. 2252, 2262, 173 L.Ed.2d 1208 (2009).

Applying these standards to the facts presently before us, we will consider Ms. Rissler's assignments of error pertaining to the alleged disqualification of Board members Weigand and Rockwell and Board attorney Cassell.

██ **1. Disqualification of Board Member Weigand.** Ms. Rissler first argues that Board member David Weigand should have been recused from the Board because he had a conflict of interest that prevented him from serving as an impartial member of the Board of Zoning Appeals. In support of her argument, Ms. Rissler asserts that Mr. Weigand is the cofounder and president of a company, DIW Group, Inc., doing business as Specialized Engineering (hereinafter referred to as "Specialized Engineering"), which inspects new sewage lines, and that this company has an ongoing exclusive contract to provide "construction inspection services," such as sewage line inspections, for the Jefferson County Public Service District. Because Mr. Weigand's company would benefit from the construction inspections that would be needed if Thornhill's CUP is approved and it develops its proposed subdivision, Ms. Rissler contends that Mr. Weigand was not an

impartial member of the Board and that he should have recused himself from participating in proceedings concerning Thornhill's CUP application.

Thornhill and the Board respond that Board member Weigand was not required to recuse himself from participating in Board decisions involving Thornhill because he did not have a direct pecuniary interest in the approval of Thornhill's CUP application and no contract was in existence at that time that would have provided him a future benefit therefrom.

■ Upon our review of the record designated for appellate consideration in this case, we agree with Ms. Rissler's contentions that Board member Weigand should have been disqualified from participating in the underlying proceedings concerning Thornhill's CUP application. Although we cannot find support for Ms. Rissler's contentions that Specialized Engineering had an exclusive contract to perform construction inspection services for the Jefferson County Public Service District *at the time* that matters involving Thornhill's CUP application were being decided, or that Mr. Weigand or Specialized Engineering performed any inspection work relevant to Thornhill during the consideration of its CUP application, an additional indicia of conflicting interests is set forth in the record: Mr. Weigand had a prior business relationship with one of the owners of Thornhill, Eugene Capriotti. The minutes of the May 20, 2004, meeting of the Board of Zoning Appeals reflects that "Mr. Weigand stated that several years ago his form [sic] worked for Mr. Capriotti and that he had no financial interest in the matter pending before the Board[.]" Despite the absence of a current pecuniary interest, the fact that Mr. Weigand had a prior business relationship with Mr. Capriotti is problematic and gives rise to an appearance of impropriety. Absent further information about the nature or extent of these prior dealings, it is plausible that Mr. Weigand could be inclined to rule

favorably for Thornhill in its CUP application process simply because the prior relationship "offer[s] a possible temptation to the average man as a judge . . . which might lead him not to hold the balance nice, clear and true." *Concrete Pipe*, 508 U.S. at 617, 113 S.Ct. at 2277, 124 L.Ed.2d 539 (internal quotations and citation omitted). Also troubling is Specialized Engineering's receipt of an exclusive contract to perform construction inspection services for the Jefferson County Public Service District *after* the conclusion of the underlying proceedings. The sheer magnitude of the subdivision Thornhill seeks to build suggests that a substantial amount of construction inspection services would be required in conjunction therewith resulting in a significant source of revenue for Specialized Engineering. That is not to say that board members may never preside over proceedings in which they have a speculative pecuniary interest. However, under the facts of this case, the circumstances surrounding Mr. Weigand's prior business relationship with an owner of Thornhill as well as the substantial pecuniary interest he acquired in the Thornhill project shortly after its approval certainly " 'raise a suspicious judicial eyebrow' " [6] as to whether Ms. Rissler and the remaining petitioners actually received "[a] fair trial in a fair tribunal" [7] as required by due process. Therefore, Mr. Weigand should have been disqualified from the Board of Zoning Appeals proceedings.

■ **2. Disqualification of Board Member Rockwell.** Ms. Rissler additionally suggests that Mr. Rockwell also should have recused himself from participating in Board decisions regarding Thornhill's CUP application because Mr. Rockwell performed intermittent legal work as a closing attorney. In this regard, Ms. Rissler represents that Mr. Rockwell, who is an attorney, performs some legal work in the field of real estate closings for the law firm of Crawford & Keller, which firm previously represented Thornhill in conjunction with its initial incorporation. As a result of Crawford & Keller's prior represen-

---

6. *Peters v. Rivers Edge Mining, Inc.*, 224 W.Va. 160, 195, 680 S.E.2d 791, 826 (2009) (quoting *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 481, 113 S.Ct. 2711, 2732, 125 L.Ed.2d 366 (1993) (O'Connor, J., dissenting)).

7. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

tation of Thornhill and Mr. Rockwell's continued association with this law firm, Ms. Rissler urges that Mr. Rockwell was disqualified from presiding over proceedings involving Thornhill's CUP application. Moreover, Ms. Rissler contends that, because the approval of Thornhill's subdivision would result in numerous real estate closings corresponding with the subdivision's numerous property lots, Mr. Rockwell stands to benefit from the approval of Thornhill's CUP application and, thus, should have recused himself from participating in proceedings related thereto on this ground as well.

Thornhill and the Board respond that Board member Rockwell was not required to recuse himself from participating in Board decisions involving Thornhill because his potential involvement with future real estate closings related to Thornhill's new subdivision, should it be approved, is too speculative and uncertain to give rise to a conflict of interest. Moreover, they contend that the scope of Crawford & Keller's prior representation of Thornhill was limited solely to Thornhill's incorporation and that such prior representation does not relate to, or otherwise involve, Thornhill's current CUP application.

As with Board member Weigand's disqualification, our review of the record in this case suggests that Board member Rockwell also should have been disqualified from participating in the underlying proceedings concerning Thornhill's CUP application. While we agree with Thornhill and the Board that the prior incorporation representation and potential real estate closings work are too remote, unrelated, and speculative to constitute disqualifying interests, we nevertheless are troubled by an additional affiliation we have discovered between Board member Rockwell and Thornhill: Mr. Rockwell's previous direct representation of Thornhill. This prior representation was disclosed and briefly discussed in the May 20, 2004, meeting minutes of the Board of Zoning Appeals, which reflects that "Mr. Rockwell stated that he practiced law with both Mr. Campbell and Mr. Hammer and represented Thorn Hill on an adverse possession case[.]" The fact that Thornhill was, in fact, Mr. Rockwell's own

client at the very least required the disclosure of this fact to the parties likely to be adversely affected by this relationship.

■ While not serving as an attorney in his role as a member of the Board of Zoning Appeals, Mr. Rockwell nevertheless was expected to adhere to the West Virginia Rules of Professional Conduct as a lawyer in his role as a private citizen. Among the first three responsibilities of a lawyer identified in the Preamble to the Rules is the recognition that "[a] lawyer is . . . a public citizen having special responsibility for the quality of justice." The Preamble continues to counsel lawyers as to their obligation to uphold the law and the justice system not just in their professional role but in their private affairs, as well: "A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. . . . A lawyer should demonstrate respect for the legal system. . . . [I]t is . . . a lawyer's duty to uphold legal process." W. Va. R. Prof. Conduct *Preamble.* We additionally have held that,

> "[u]nder the *Code of Professional Responsibility,* a lawyer may be disqualified from participating in a pending case if his continued [participation] would give rise to an apparent conflict of interest or appearance of impropriety based upon that lawyer's confidential relationship with an opposing party." Syllabus point 2, *State ex rel. Taylor Associates v. Nuzum,* 175 W.Va. 19, 330 S.E.2d 677 (1985).

Syl. pt. 3, *State ex rel. Cosenza v. Hill,* 216 W.Va. 482, 607 S.E.2d 811 (2004) (per curiam).

Applying these standards to the case *sub judice,* we are quite concerned that Board member Rockwell's participation in the proceedings involving Thornhill's CUP application, wherein Thornhill is Mr. Rockwell's former client, gives rise to the "appearance of impropriety." Syl. pt. 3, in part, *Cosenza,* 216 W.Va. 482, 607 S.E.2d 811. This is particularly true when viewed in the context of our decision involving then-former Board attorney Cassell's representation of Thornhill *after* the proceedings at issue herein had concluded, and our recognition that the inter-

ests of the Board and of Thornhill are very different and may, quite possibly, conflict:

> [W]hile Thorn Hill's and the BZA's [Board's] positions may coincide in connection with specific issues that arise in the CUP application process, the interests of the two are not generally aligned and may on any given issue be in sharp conflict. This is because Thorn Hill wants to get a permit; whereas the BZA wants to follow the law and serve the best interests of the people of Jefferson County—whether Thorn Hill gets a permit or not.

*State ex rel. Jefferson County Bd. of Zoning Appeals v. Wilkes,* 221 W.Va. 432, 441 n. 15, 655 S.E.2d 178, 187 n. 15 (2007). Insofar as "even the probability of unfairness"[8] should be avoided to ensure that the hearing before an impartial tribunal guaranteed by due process has been afforded, we conclude that Mr. Rockwell should have been disqualified from the Board of Zoning Appeals proceedings concerning Thornhill's CUP application.

**■ 3. Disqualification of Board Attorney Cassell.** Lastly, Ms. Rissler contends that the Board's attorney, J. Michael Cassell, also should have been disqualified from participating in the proceedings before the Board because he eventually left the Board's employ to work for Thornhill's counsel, the law firm of Campbell, Miller, & Zimmerman (hereinafter referred to as "CMZ"). More specifically, Mr. Cassell resigned as the Board's attorney on December 10, 2004; last worked for the Board on January 31, 2005; and joined the law firm of CMZ on February 1, 2005. Ms. Rissler claims that, since Mr. Cassell undoubtedly negotiated the terms of his employment with CMZ before his departure from the Board's employ, and because he continued to represent the Board in its proceedings involving Thornhill during this time, Mr. Cassell had a conflict of interest and should have been disqualified from the Board's proceedings involving Thornhill.

Thornhill and the Board also reject Ms. Rissler's contentions that Board attorney Cassell should have been disqualified from participating in the underlying proceedings. In this regard, Thornhill and the Board contend that Mr. Cassell did not work for CMZ while he was employed as the Board's attorney and that he did not represent Thornhill while he was representing the Board.

The issue of Mr. Cassell's disqualification in matters related to Thornhill's CUP application is not a matter of first impression for this Court. We previously considered whether Mr. Cassell should be disqualified from representing Thornhill in such proceedings *after* he left his position as the Board's attorney. *See State ex rel. Jefferson County Bd. of Zoning Appeals v. Wilkes,* 221 W.Va. 432, 655 S.E.2d 178. In the prior case, we determined that Mr. Cassell could not, as an employee of CMZ, represent Thornhill in its CUP application proceedings given his prior representation of the Board at an earlier stage of the same proceedings. *Id.*

In the case *sub judice,* we are called upon to decide whether Mr. Cassell also was prohibited from representing the Board, while he was still employed by the Board, *before* he began to work for CMZ, at a time when he most likely was negotiating the terms of his employment with CMZ. Rule 1.11 of the West Virginia Rules of Professional Conduct very clearly prohibits such a scenario:

> (c) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:
>
> . . . .
>
> (2) negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially, except that a lawyer serving as law clerk to a judge, other adjudicative officer or arbitrator may negotiate for private employment as permitted by Rule 1.12(b) and subject to the conditions stated in Rule 1.12(b).

Here, Mr. Cassell served as the Board's attorney and, thus, was a "public ... employee." W. Va. R. Prof. Conduct 1.11(c). At the same time of Mr. Cassell's public service, CMZ represented Thornhill, who was "a party in a matter in which [Mr. Cassell] [was]

---

**8.** *Murchison,* 349 U.S. at 136, 75 S.Ct. at 625, 99 L.Ed. 942.

participating personally and substantially"[9] on behalf of the Board. While it is not clear when, exactly, Mr. Cassell commenced and concluded his employment negotiations with CMZ, it is apparent that such talks likely occurred while he was still working for the Board given that he tendered his notice of resignation from his position as the Board's attorney on December 10, 2004, over one month before his resignation actually became effective on January 31, 2005. Mr. Cassell began working for CMZ on February 1, 2005. Such circumstances certainly give rise to an appearance of impropriety.

■ To ensure that justice is served, we have vested circuit courts with the ability to disqualify attorneys when justice so requires.

"'"A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship." Syl. Pt. 1, *Garlow v. Zakaib,* 186 W.Va. 457, 413 S.E.2d 112 (1991).' Syllabus point 2, *Musick v. Musick,* 192 W.Va. 527, 453 S.E.2d 361 (1994)." Syllabus point 3, *State ex rel. Michael A.P. v. Miller,* 207 W.Va. 114, 529 S.E.2d 354 (2000).

Syl. pt. 4, *Cosenza,* 216 W.Va. 482, 607 S.E.2d 811. Moreover,

[i]n determining whether to disqualify counsel for conflict of interests, the trial court is not to weigh the circumstances "with hair-splitting nicety" but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing "the appearance of impropriety," it is to resolve all doubts in favor of disqualification.

*State ex rel. Jefferson County Bd. of Zoning Appeals v. Wilkes,* 221 W.Va. at 440, 655

S.E.2d at 186 (quoting *United States v. Clarkson,* 567 F.2d 270, 273 n. 3 (4th Cir. 1977) (additional citations omitted)). Under the facts of the case *sub judice,* we find that, when presented with Ms. Rissler's motion to disqualify Mr. Cassell, the circuit court should have "resolve[d] all doubts in favor of disqualification"[10] and granted Ms. Rissler's motion to preserve "the fair [and] efficient administration of justice." Syl. pt. 4, in part, *Cosenza, id.*

**4. Due process summary.** Having determined that Board members Weigand and Rockwell and Board attorney Cassell should have been disqualified from participating in the Board of Zoning Appeals proceedings concerning Thornhill's CUP application, we conclude that Ms. Rissler and the remaining petitioners did not receive the process to which they were due because they did not receive "[a] fair [hearing] in a fair tribunal." *In re Murchison,* 349 U.S. at 136, 75 S.Ct. at 625, 99 L.Ed. 942. *Accord Concrete Pipe & Prods. of California, Inc. v. Construction Laborers Pension Trust for S. California,* 508 U.S. at 617, 113 S.Ct. at 2277, 124 L.Ed.2d 539 ("[D]ue process requires a 'neutral and detached judge in the first instance.'" (quoting *Ward v. Village of Monroeville,* 409 U.S. at 61–62, 93 S.Ct. at 84, 34 L.Ed.2d 267)). Accordingly, we reverse the decision of the Jefferson County Circuit Court denying Ms. Rissler's petition for writ of certiorari on this basis. We further remand this matter to afford Ms. Rissler and the other petitioners a new Board of Zoning Appeals hearing on their objections regarding the approval of Thornhill's CUP application. To ensure that this new hearing occurs before a neutral and impartial tribunal, Board members Weigand and Rockwell are disqualified and should be replaced by two of the Board's alternate members as contemplated by W. Va.Code § 8A–8–4(f) (2004) (Repl. Vol. 2007). Furthermore, any members or alternate members of said Board who have an actual or potential bias that may disqualify them from participating in or pre-

---

**9.** W. Va. R. Prof. Conduct 1.11(c)(2).

**10.** *State ex rel. Jefferson County Bd. of Zoning Appeals v. Wilkes,* 221 W.Va. 432, 440, 655

S.E.2d 178, 186 (2007) (internal quotations and citation omitted).

siding over proceedings concerning Thornhill's CUP application should disclose the nature of their interest before such proceedings take place and should also be disqualified and replaced by alternate members who have no such actual or potential interest in the proceedings. Finally, Board attorney Cassell likewise is disqualified from participating in the new Board of Zoning Appeals proceedings and should be replaced by new counsel for the Board who does not have a disqualifying interest in these proceedings.

### B. Interpretation of § 6.4(g)

For her final assignment of error, Ms. Rissler contends that the circuit court misinterpreted § 6.4(g) of the Jefferson County Zoning and Land Development Ordinance. Insofar as our decision of Ms. Rissler's assignments of error concerning due process and disqualification of certain Board members and the Board's attorney requires the reversal of the circuit court's order and the remand of this case for a new hearing before the Board, it would be premature for us to consider the propriety of the circuit court's interpretation of the Ordinance at this point in time. " 'Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes....' *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W.Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943)." Syl. pt. 2, in part, *Harshbarger v. Gainer*, 184 W.Va. 656, 403 S.E.2d 399 (1991). In light of our disposition of this case, it is quite possible that, on remand, the Board of Zoning Appeals may interpret § 6.4(g) in the exact same manner as it did in the proceedings underlying the instant appeal; however, it is equally as plausible that the Board may adopt a contrary construction of this provision. Until the remand proceedings have been conducted and concluded and an appeal, if any, is taken to the circuit court, and subsequently to this Court, we are unable to rule upon this assignment of error because we cannot know in what posture this issue may present itself, if this issue even arises again at all. Therefore, we save this issue for another day.

## IV.

### CONCLUSION

For the foregoing reasons, the March 5, 2009, order of the Circuit Court of Jefferson County is hereby reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.